STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-0027


JADE M. BARNES

VERSUS

PAUL D. BARNES


************

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT,
PARISH OF AVOYELLES, NO. 2005-8187-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of John D. Saunders, Jimmie C. Peters, and Glenn B. Gremillion, Judges.


AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

Melissa Moreau
Attorney at Law
Post Office Box 1200
Marksville, LA 71351
(318) 253-9107
COUNSEL FOR PLAINTIFF/APPELLEE:
      Jade McCann Barnes

Gregory R. Aymond
Attorney at Law
Post Office Box 5503
Alexandria, LA 71307
(318) 445-3618
COUNSEL FOR DEFENDANT/APPELLANT:
      Paul Dewayne Barnes

PETERS, J.

This child support matter is before us on appeal filed by Paul Dewayne Barnes from judgments rendered in jointly tried actions he filed against the State of Louisiana, Department of Social Services (department), and in a rule to show cause against his former wife, Jade McCann Barnes. For the following reasons, we affirm in part, reverse in part, and render judgment in his favor setting aside an income assignment order granted by the trial court.

## DISCUSSION OF THE RECORD

Paul Dewayne Barnes (Paul) and Jade McCann Barnes (Jade) were divorced by consent decree dated June 22, 2006. Among other things, the consent decree designated Jade as the domiciliary parent of the two children born of the marriage, Alayna and Michael; ordered Paul to pay Jade $359.02 per month as child support and $188.50 per month as daycare expenses; and provided for adjustments in Paul's monthly child support and daycare payments in the form of a deduction for the time the children spent with him during the summer.[1] The consent judgment did not provide for a specific date of the month on which monthly payments were due, nor did it provide for an income assignment of Paul's child support.

Barely two months later, on August 30, 2006, the department[2] sought and obtained from the trial court an *ex parte* order amending the child support decree by requiring that Paul make all support payments to the department through the issuance of an immediate income assignment order. The department attached to its motion seeking *ex parte* relief an affidavit signed by Jade wherein she asserted under oath

---

[1]The consent judgment provided that Paul was to pay Jade one-half of the monthly child support obligation during the month of June and relieved him of any payment during July of each year.

[2]The Office of the District Attorney for Twelfth Judicial District in Avoyelles Parish represented the department in these proceedings.

"that [she] desire[d] the services of the Department of Social Services for the State of Louisiana and that support enforcement services [were] being provided [her] under Louisiana Revised Statute 46:236.1, et seq." The *ex parte* order issued by the trial court decreed that "an Immediate Income Assignment pursuant to Louisiana Revised Statutes 46:236.[2]A(2),(3),(4) and (5) be issued for collection of current child support and arrears as reflected in the [judgment of June 22, 2006]."

Paul responded to the department's action by filing, on September 7, 2006, a petition to annul the August 30 *ex parte* order. On that same day, Paul filed a separate rule to show cause directed at Jade seeking, among other things, a judgment against her for $252.00—an amount Paul claimed was due him as reimbursement for Jade's share of daycare expenses during the months of July and August of 2006, when Paul had custody of the children.

The trial court heard both the petition for annulment filed against the department and Paul's rule to show cause filed against Jade in a single hearing, held on September 25, 2006. The evidence presented at the hearing established that there exists little or no dispute concerning the underlying facts in the litigation.

With regard to payments made by Paul to Jade, the record established that Paul's employer paid him on a weekly basis and he generally paid his support obligation on a weekly basis as well. Although the June 22, 2006 consent judgment did not specify when the monthly obligation was to begin, Paul had begun making weekly payments of $82.85 on June 2 and continued to do so through June 23.[3] Thus, for the month of June, Paul had overpaid Jade in the amount of $151.89.[4] On August

---

[3]The parties obviously concluded that the payments were to begin the first of June.

[4]By paying weekly, Paul paid Jade $331.40 for the month of June (4 x 82.85). However, because his obligation for the month of June under the consent judgment was for one-half of the normal monthly child support payment, he overpaid Jade for that month by $151.89 [331.40 –

10, 2007, Paul paid Jade $207.13, which satisfied his obligation for that month.[5] At the September 25 hearing, Paul tendered $359.02 to Jade for his September obligation. Additionally, the evidence established that pursuant to the terms of the consent judgment, Jade owed Paul $252.00 as reimbursement for daycare expenses accrued during the summer months.

With regard to the issue of the department's involvement, the evidence established that despite the assertions in her affidavit in support of the *ex parte* order, prior to filing the August 30 rule the department had provided no support enforcement services to Jade. In fact, Jade's involvement with the department arose when she went to the district attorney's office, not to obtain support enforcement services, but for advice because she was dissatisfied with the lack of a specific payment date in the original consent decree.

Following the September 25 hearing, the trial court rendered judgment denying Paul's request for annulment of the *ex parte* order and stay of the income assignment order; granted Paul judgment against Jade for $252.00 as reimbursement for child daycare expenses; and ordered that Paul pay his child support obligation in two equal monthly payments, or alternatively weekly, based on his employer payment policy. The trial court signed a written judgment to this effect on October 30, 2007. Paul appealed the October 30 judgment, asserting that the trial court erred in refusing to grant him relief from its *ex parte* order and in refusing to hold Jade in contempt of court for not timely reimbursing him for the child daycare expenses.

_____

(359.02 ÷ 2)].

[5]The amount paid in August, together with the overpayment from June, equaled the amount due for August [151.89 + 207.13 = 359.02]. Pursuant to the consent judgment, Paul owed nothing for the month of July.

**OPINION**

For the reasons that follow, we find that the trial court erred in failing to grant Paul the relief he demanded in his opposition to the department's intervention action. The *ex parte* orders requiring payments directly to the department should have been set aside, and the order effectuating the income assignment should have been stayed.

The department's involvement in this matter is based on the fact that Jade collects Medicaid benefits on behalf of the two children. Louisiana Revised Statutes 46:236.1.2(A) authorizes the department to "develop and implement a program of family support" in a number of situations, including the situation where Medicaid benefits are involved. Among other things, the department is authorized to "[e]nforce, collect, and distribute the support obligation owed by any person to his child or children and to his spouse or former spouse with whom the child is living if a support obligation has been established with respect to such spouse or former spouse" and to "[o]btain and modify family and child support orders." La.R.S. 46:236.1.2(A)(1) and (4).

There is no dispute that Paul's support obligation to his children had been established by the June 2006 consent decree. However, it is also undisputed that Paul was current in his obligation to his children, making enforcement or collection services totally unnecessary. Nonetheless, the department argues that providing Medicaid services is equivalent to providing enforcement services and, thus, that Jade's affidavit and its certification of its petition were both correct. We reject this argument as the distinction is elementary. "Support services" in the sense that the department is supplying Medicaid for the children and "support enforcement services" in the sense that it is supplying enforcement of the support obligation owed

by the parent to his children are two different things. Thus, because the department was not supplying support enforcement services to Jade when she sought help from the district attorney's office, it cannot rely on La.R.S. 46:236.1.2(A)(1) to justify its *ex parte* order.

For the same reason, the department cannot rely on La.R.S. 46:236.1.2(A)(4) as authority for its action. Louisiana Revised Statutes 46:236.2(A)(1) relates to the authority of the department to amend support orders and provides:

> The department or district attorney may, by a written motion together with a written certification from the department that support *enforcement* services are being furnished to the individual, to the caretaker of any individual receiving support benefits, or to the payor of any support benefits for such individual, obtain an order to require any person under an order to support such individual or caretaker to make such support payments payable to the department.

(Emphasis added).

Intervention by the department or the district attorney's office requires a showing that support enforcement services have actually been provided. *State ex rel. Jones v. Mallett*, 98-1051 (La.App. 3 Cir. 2/3/99), 737 So.2d 810, *writ denied*, 99-639 (La. 7/2/99), 747 So.2d 14. Mere certification is insufficient. Even if there exists a written certification with the pleadings filed, failure to establish that certification as correct in subsequent proceedings defeats the right of the department to intervene. *Id.*

Having found that the department had no statutory right to intervene in this support litigation, we also find that the trial court erred in granting the income assignment order. In reaching this conclusion, we begin our analysis with an evaluation of the June 22, 2006 consent decree and the application of La.R.S. 9:303(A) to that judgment. That statute provides:

5

> In all new child support orders after January 1, 1994, that are not being enforced by the Department of Social Services, the court *shall* include as part of the order an immediate income assignment *unless* there is a written agreement between the parties or the court finds good cause not to require an immediate income assignment.

(Emphasis added).

The June 22, 2006 consent decree was not originally being enforced by the department, conforms to the definition of "written agreement" contemplated by La.R.S. 9:303(A),[6] and did not include an immediate income assignment. Thus, the trial court's approval of that written agreement established that the it found no good cause for an immediate assignment order at the time of the consent judgment, a matter which is within the trial court's discretion. *See* La.R.S. 9:303(B)(2)(d). Furthermore, the record contains evidence that Paul had already begun making his payments, was not delinquent in his efforts, and was not likely to become so. The absence of any evidence in the record indicating that Paul is likely to become delinquent constitutes good cause for rejecting an income assignment order. *Curtis v. Curtis*, 34,317 (La.App. 2 Cir. 11/1/00), 773 So.2d 185. Therefore, the record clearly establishes that La.R.S. 9:303(A) did not mandate the inclusion of an income assignment order in the initial consent decree rendered on June 22, 2006.

The department's intervention asserted that it sought modification and subsequent enforcement of the June 22, 2006 support decree by an immediate income assignment order "for collection of current child support *and* arrears." (Emphasis added). At the hearing on Paul's motion, the department acknowledged that there existed no change of circumstances between June 22, 2006, and its intervention filed

---

[6]Louisiana Revised Statutes 9:303(B)(1) defines a written agreement as "a written alternative arrangement signed by both parents, reviewed by the court, and entered into the record of the proceedings."

6

on August 23, 2006. Specifically, the department was required to acknowledge that Paul was not in arrears when its intervention was filed.

Louisiana Revised Statutes 46:236.3 provides the department's authority to seek child support enforcement by income assignment. In that regard, La.R.S. 46:236.3(B)(1) provides:

> Upon entry of any court order for the establishment or modification of support, the court shall order an immediate income assignment, which shall be effectuated immediately by providing a written notice to the payor or payors of income, unless there is a written agreement between the parties or the court finds *good cause* not to require immediate income assignment. This income assignment may be effectuated by providing a written notice to any payor or payors of income, advising the payor to withhold an amount for current support, plus an additional amount, to be determined by the obligee, toward any arrearage.

(Emphasis added).

Louisiana Revised Statutes 46:236.3(B)(2)(b) provides that "good cause" as used in La.R.S. 46:236.3(B)(1) "exists if the court or the department finds that implementing an immediate income assignment would not be in the best interests of the child or finds proof of timely payment of previous support awards within the immediate past twelve consecutive months."[7] In this matter, the trial court made the following statement concerning implementation of the income assignment order:

> Now, efficiency and equity favor income assignment orders. In this particular case the Department of Social Services has deemed Mrs. Barnes to be eligible for their assistance. We've talked about medicaid, her being a recipient. If there's a pattern of late payments or partial payments, not any specific date or concerning contempt. Obviously, Mr. Barnes is not in contempt. What the claimant or what the recipient

---

[7]Louisiana Revised Statutes 46:236.3(D)(1) statutorily provides a method for securing an immediate income assignment order "[i]n any case in which the department is providing services and in which an immediate income assignment has not been issued." In such a situation, "the case shall be subject to an immediate income assignment upon a delinquency of an amount equal to one month's support." The problem for the department in this case is that, as we previously determined, the department was not providing support enforcement services. Additionally, Paul was not delinquent in an amount equal to one month's support obligation. *See* La.R.S. 46:236.3(A)(1).

> perceives as being partial payments, late payments it can be destructive
> to that person's income and planning and use of funds for the children.

To the extent that the trial court's finding of "partial payments, late payments" may be regarded as a finding of delinquency, it was manifestly erroneous. The evidence clearly reveals that there were no delinquent support payments either as defined by the statute or as required by the consent decree.

In *State ex rel. Jones,* 704 So.2d at 960, this court opined that "the legislature intended to provide public enforcement of private child support only in cases of delinquency, where one of the types of public support set forth in La.R.S. 46:236.1 [now, R.S. 46:236.1.2] is concerned, or perhaps where the recipient might otherwise be imperilled."[8] The court added that it was inconceivable that the legislature would have intended to permit the department or the district attorney's office to utilize their limited resources to intervene in cases of child support where their intervention was not warranted by need or pronounced public policy. *Id.* The trial court, in its October judgment in the present case, seemingly saw a need to provide, for Jade's sake, a specific date every month for support payments and avoid payments by the week, to which Jade had objected, but in actual fact its judgment effectuated almost no practical changes in the consent decree. Paul was ordered to make the payments "one-half (½) on the 1st and one-half (1/2/)[sic] on the 15th of each month or alternatively weekly if the defendant is paid by his employer as such."

---

[8]Effective July 2, 2003, former La.R.S. 46:236.1 was repealed, and the new La.R.S. 46:236.1.1, et seq. took its place. Acts 2003, No. 1068. No changes occurred in the definition of delinquent. The June 3, 2003, minutes of the Senate Judiciary "A" Committee considering House Bill No. 1227 reveal that Lisa Woodruff-White, Department of Social Services, Child Support Enforcement, appeared before the committee and explained that the bill added subtitles throughout the various statutes and that the definition of delinquent was also made the same throughout the child support provisions.

We find that the order effectuating the income assignment should have been stayed, and we will render judgment accordingly.

We turn now to Paul's single assignment of error, involving the disposition of his rule to show cause filed against Jade. As observed earlier, he asked primarily for enforcement of the consent decree regarding apportionment of daycare expenses and that Jade be found indebted to him for reimbursement of $252.00 in daycare expenses which he had paid in the summer of 2006. The trial court granted him that relief. His complaint on appeal is that the trial court did not hold Jade in contempt of court for not paying her share of those expenses.

This assignment is without merit. "Contempt, in the setting of delinquent child support requires the trial judge to determine that a party's disobedience of the court's support order constitutes a parent's willful or deliberate refusal to perform an act which was within the power of the parent to perform." *Fink v. Bryant*, 01-987, p. 7 (La. 11/28/01), 801 So.2d 346, 350. A trial court is vested with great discretion to determine whether a party should be held in contempt for willfully disobeying a trial court judgment. *Id.* The consent decree's formula for calculating the parents' respective shares of fluctuating daycare expenses during the summer months was complicated (so much so, in fact, that Paul sought modification of that formula in his rule to show cause). There was no abuse of the trial court's discretion in its finding that Jade was not in contempt.

**DISPOSITION**

For the reasons assigned above, we reverse and set aside the judgment of the trial court maintaining its *ex parte* order requiring that Paul Dewayne Barnes make his child support payments directly to the State of Louisiana, Department of Social

9

Services.  We also reverse and set aside the judgment of the trial court maintaining its *ex parte* order denying Paul Dewayne Barnes's petition to stay the trial court's order effectuating an immediate income assignment.  Judgment is rendered staying the latter order.  In all other respects, including the denial of the rule for contempt, the judgment is affirmed.  We assess all costs of this appeal to the State of Louisiana, Department of Social Services, pursuant to La.R.S. 13:5112(A).  We establish the amount of the costs, pursuant to that statute, at $806.00.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**