NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-769

DEANNA ARRINGTON

VERSUS

JOSHUA H. ARRINGTON

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 232,410
HONORABLE GEORGE CLARENCE METOYER JR, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and J. David Painter, Judges.

AFFIRMED.

Thibodeaux, Chief Judge, concurs in the result and assigns written reasons.

Kenneth Alfred Doggett
P.O. Box 13498
Alexandria, LA 71315-3498
(318) 487-4251
Counsel for Plaintiff/Appellee:
Deanna Arrington

**Brian K. Thompson**
**P. O. Box 13984**
**Alexandria, LA 71315**
**(318) 473-0052**
**Counsel for Defendant/Appellant:**
**Joshua H. Arrington**

**EZELL, Judge.**

Joshua Arrington appeals a trial court judgment which modified his physical custody of his son and ordered him to pay child support retroactive to the date of judicial demand. For the following reasons, we affirm.

**FACTS**

Deanna and Joshua Arrington were married on June 29, 2002. During the marriage, they had one son Kole, born on September 13, 2005. On September 28, 2009, a judgment of divorce was entered granting Deanna a divorce. On February 19, 2010, a consent judgment concerning custody was signed.

The parties agreed to joint custody of Kole, with Deanna designated as the domiciliary parent. Joshua was granted custody of Kole every other Friday to Monday and on Monday nights when he did not have custody the previous weekend. Joshua is employed by the Louisiana National Guard. When Joshua's time with Kole would overlap with days he was away for military exercises, Joshua was granted custody the following weekend, even if it meant Joshua would have Kole two weekends in a row. Holidays were split equally between the parties.

Joshua also had a son, Koby, from a previous relationship. Joshua has sole custody of Koby.[1] As part of the consent judgment, the Arringtons, including Kole, were required to see Koby's counselor, Dr. George Haig, as needed. Koby and Kole were also to have separate bedrooms at Joshua's house.

On September 16, 2010, Joshua filed a rule for contempt seeking designation as the primary custodian of Kole, alleging that Deanna had refused to allow Joshua to exercise his physical custody of Kole. In response, Deanna also filed a rule for contempt and child support arrearages. Deanna alleged that Joshua now has a live-in girlfriend who also has a child. As a result, Kole does not have a separate bedroom

---

[1] In *Arrington v. Campbell*, 04-1649 (La.App. 3 Cir. 3/9/05), 898 So.2d 611, this court reversed the trial court and awarded sole custody of Koby to Joshua Arrington.

when visiting Joshua. Deanna also alleged that there were child support arrearages in the amount of $10,472.00.

A hearing was held on December 6, 2010. Following the hearing, the trial court ordered that overnight custody rights of Joshua be suspended. Joshua's physical custody was restricted to every other Saturday from 9:00 a.m. to 9:00 p.m. and every other Sunday from 9:00 a.m. to 6:00 p.m. with no overnight visits. The trial court also denied Joshua's motion for contempt.

Joshua filed the present appeal. He argues that the trial court erred in applying the standard enunciated by the Louisiana Supreme Court in *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986), and in modifying his visitation rights. Joshua also claims that the trial court should have found Deanna in contempt of the February 19, 2010 judgment in her refusal to follow the visitation order. Lastly, Joshua argues that the trial court erred in finding him in arrears for child support.

## APPLICABLE STANDARD

Joshua argues that the heightened standard of *Bergeron* is inapplicable to reconsiderations of visitation, citing *White v. Fetzer*, 97-1266 (La.App. 3 Cir. 3/6/98), 707 So.2d 1377, *writ denied*, 98-931 (La. 5/15/98), 719 So.2d 466. The supreme court in *Bergeron*, 492 So.2d at 1199, held:

> that when a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed.

Joshua argues that the trial court committed a legal error in applying the heightened standard of *Bergeron*, so this court should conduct a de novo review. Joshua refers to a statement by the trial court following its oral ruling in which it stated, "This is definitely a *Bergeron*."

The judgment modified the consent custody judgment as follows: "Joshua Arrington's custodial periods with the minor child, Kole Arrington, shall be limited to

no overnight periods consisting of every other Saturday and Sunday: with the Saturday period being from 9:00 a.m. to 9:00 p.m. and the Sunday period being from 9:00 a.m. to 6:00 p.m." A preliminary injunction was also issued restraining Joshua from allowing any contact whatsoever in any manner whatsoever between Koby and Kole.

When the colloquy between the attorneys and the trial court is read together, it is apparent that the trial court was rendering a considered decree as opposed to an interim ruling as requested by Joshua's attorney. The trial court was merely indicating that any future modification to the judgment would be subject to the *Bergeron* standard. As noted earlier, a consent judgment had previously been entered, so there had not been a considered decree of custody. We do not find that the trial court applied the *Bergeron* standard in making its decision in this case. However, we do note that the judgment signed by the trial court on January 3, 2011, modified only Joshua's physical custody schedule. As it stands, the parties still have joint custody of Kole.

### MODIFICATION OF PHYSICAL CUSTODY

Joshua argues that the trial court erred in modifying his visitation rights from that set forth in the February 19, 2010 judgment. However, what has actually been modified is the schedule of joint custody, so we approach this case as a modification of custody. *See Granger v. Granger*, 09-272 (La.App. 3 Cir. 11/10/09), 25 So.3d 162, *writ denied*, 09-2687 (La. 12/18/09), 23 So.3d 941.

Deanna sought modification of custody alleging that Kole had to sleep in the same room with Koby in violation of the consent judgment. She further alleged that Kole was under the care, treatment, and counseling of a social worker because he had become upset, rebellious, and greatly troubled and depressed.

The trial court modified the schedule of physical custody due to a concern of issues between the Koby and Kole. Joshua claims that there is no reason to restrict his

3

custody with Kole to no overnight visitation just because Kole is restricted from contact with Koby. He argues that there was no reason to restrict Johsua's visitation with Kole if Joshua is enjoined form allowing Kole and Koby to interact. Joshua alleges that he could enjoy custody with Kole every other weekend while Koby is visiting his mother.

The principal consideration in a custody matter is the best interest of the child. La.Civ.Code art. 131. The party seeking a modification of a consent decree must prove that there has been a material change of circumstances since the original decree and that the proposed modification is in the best interest of the child. *Maxwell v. Stanley*, 10-1049 (La.App. 3 Cir. 2/16/11), 57 So.3d 1193. "A trial court's determination in child custody matters is entitled to great weight, and will not be disturbed on review in the absence of a clear showing of abuse of discretion." *Granger*, 25 So.3d at 164-65 (citing *AEB v. JBE*, 99-2668 (La. 11/30/99), 752 So.2d 756).

The parties were originally in counseling with Dr. Haig because Koby had emotional issues due to cruel treatment and sexual abuse while in the custody of his mother. This is why Joshua has sole custody of Koby.

Koby had behavioral issues when he was younger, resulting in expulsion from school. Allison Andrews, principal at Paradise Elementary, testified concerning Koby's behavioral issues. She was principal when he was at W.O. Hall. Koby would not obey the teachers and would throw things. Koby is presently at Paradise. Ms. Andrews has observed that the frequency of his misbehavior has decreased dramatically.

Recently, Koby attended a daycare called College Camp Child Development Center. Traci Walker, the owner of the daycare, testified that Koby was dismissed in June or July of 2010 for aggressive behavior. She explained that he refused to go to timeout and lunged at her. She stated that he scared her. Ms. Walker said that there

were also occasions when Koby struck other children. She reported any problems to Joshua.

Brittany Sanchez dated Joshua for a year and also had a child, who was six weeks old at the time of trial, with him. Additionally, Ms. Sanchez has a six-year-old boy from a previous marriage. Ms. Sanchez testified that Koby hit her son in the face with a leather belt which left a welt on his face that did not go away for two days. Ms. Sanchez further explained that she would never leave her son alone because of Koby's temper. She has even seen Koby throw Kole face down on the floor. Ms. Sanchez explained that Koby always had an aggressive nature towards children that were smaller than him and that he loved to bully them. Ms. Sanchez stated that she was afraid for the safety of her son around Koby.

Janet Bennett, Deanna's mother, also testified at trial. She lives about three to four miles from Deanna, so she sees Kole on a frequent basis. Ms. Bennett described how she noticed Kole fondling himself when he spent the night at her house in September. She told him not to do it, and he told her that Koby does it. Kole also related to her that he and Koby had a secret but would not tell her what it was. Ms. Bennett also testified that Kole was taking a bath at her house later and started playing with his rectum. He related how he was scared at night at his father's house because Koby bothered him.

Testimony at trial revealed that Deanna brought Kole to see Tara Bordelon, a licensed clinical social worker, on a couple of occasions in September and October 2010. This was following the release by Dr. Haig in April 2010. Deanna explained that Kole's personality had changed. He would get upset and start crying every time he had to go to his father's house.

Ms. Bordelon explained that Kole did not want to go visit with his father because there was a two-year-old there and he felt like he did not belong. Kole told her he enjoyed the weekend with his father and brother. Kole did tell her that Koby

5

tried to squeeze his head and they fought a little bit. Deanna indicated to Ms. Bordelon that she did not feel like she had to make Kole go to his father's house if he was not comfortable. Ms. Bordelon did not feel that there had been any inappropriate behavior and had not been alerted to the fact that she should be suspicious.

Deanna then sought the services of another licensed counselor, Darla Jo Barron-Gilbert, because she did not feel that Ms. Bordelon and Kole connected. Ms. Barron–Gilbert first saw Kole on November 5, 2010. Kole told her that his brother had been mean to him. He also told Ms. Barron-Gilbert that his brother touched his private parts. At that point, Ms. Barron-Gilbert made a call to the Department of Children & Family Services to report sexual abuse.

Ms. Barron-Gilbert saw Kole on several more occasions prior to the hearing. Kole indicated that he was afraid of Koby and that he had told his father about everything that Koby had done to him. Ms. Barron-Gilbert believed that Kole had been sexually and physically abused by Koby. She recommended that Kole not go back to his father's house until there had been an investigation because Joshua should have been hyper-vigilant in his supervision due to Koby's past issues.

We see no abuse of discretion in the trial court's decision. The concern here is the interaction between Kole and Koby and Joshua's failure to recognize that there may be issues.

## CONTEMPT

Joshua also contends the trial court erred in failing to find Deanna in contempt of the February 19, 2010 judgment for failing to allow him his scheduled time with Kole on several occasions as mandated by the judgment. Joshua alleges that any allegations that Kole was having problems with Koby were not at issue when he attempted to get Kole as designated in the judgment on several occasions before September 2010, when Kole's grandmother first became concerned.

Louisiana Code of Civil Procedure Article 221 defines contempt of court as "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. Contempts of court are of two kinds, direct and constructive." Pursuant to La.Code Civ.P. art. 224(2), constructive contempt "must be based on a finding that the accused violated an order of the court 'intentionally, knowingly, and purposefully, without justifiable excuse.'" *Lang v. Asten, Inc.*, 05-1119, p. 1 (La. 1/13/06), 918 So.2d 453, 454 (quoting *Brunet v. Magnolia Quarterboats, Inc.*, 97-187, p. 10 (La.App. 5 Cir. 3/1/98), 711 So.2d 308, 313, *writ denied*, 98-990 (La. 5/29/98), 720 So.2d 343, *cert. denied*, *Polaris Ins. Co., Ltd. v.* Brunet, 525 U.S. 1104, 119 S.Ct. 869 (1999)). "A trial court is vested with great discretion to determine whether a party should be held in contempt for willfully disobeying a trial court judgment." *Barnes v. Barnes*, 07-27, p. 9 (La.App. 3 Cir. 5/2/07), 957 So.2d 251, 257 (citing *Fink v. Bryant*, 01-987 (La. 11/28/01), 801 So.2d 346).

At the hearing, Deanna explained that there were occasions when she was concerned for Kole's welfare because Koby was being extremely rough on him to the point of causing marks on Kole. Deanna also explained that one time she had asked Joshua to let Kole ride the bus home to go to tee ball practice, and then Joshua could get him after practice. Instead, Joshua picked him up at school without informing her. When time for the next visit, Deanna informed the school that Kole was to ride the bus home from school because she did not trust Joshua. She also did not worry about Fathers' Day because there is nothing in the judgment specifying visitation on Fathers' Day or Mothers' Day. Although Joshua testified that he tried texting and calling Deanna to get Kole for Fathers' Day, Deanna denied receiving any communication from him.

Although it is apparent that Joshua and Deanna do not necessarily work together in an amicable manner concerning their time with Kole, we cannot say the

trial court abused its great discretion in failing to find Deanna in contempt of court. Deanna was concerned for Kole's safety when he was around Koby before any allegations of potential sexual abuse arose. This is in addition to the fact that she tried to work with Joshua when Kole had activities the weekend Joshua was to have Kole.

## CHILD SUPPORT

Joshua finally argues that the trial court was erroneous in holding him in arrears for child support from the date of judicial demand. In support of his argument, Joshua contends that Deanna assigned her monthly child support enforcement to the State of Louisiana for collection. She later closed her case file with the State and began receiving payments directly from Joshua. Joshua contends that he had to prove that was not in arrears for child support before the case was closed.

The consent judgment provided that the issue of child support was reserved and that there would be a separate consent judgment regarding child support. No judgment setting an amount of child support was ever rendered. It also appears that there was never an order of interim child support.

Louisiana Revised Statutes 9:315.21(B)(1) provides that a judgment initially awarding child support is effective as of the date the judgment is signed. When there is no interim award of child support in effect, La.R.S. 9:315.21(B)(2) requires that a final award of child support be made retroactive to the date of judicial demand. *Vaccari v. Vaccari*, 10-2016 (La. 12/10/10), 50 So.3d 139.

Since there was no interim award of child support, the trial court was required to make the award of child support retroactive to the date of judicial demand. We find no error in the trial court's ruling that Joshua is responsible for child support from the date of judicial demand.

For the reasons set forth in this opinion, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Joshua Arrington.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules-Courts of Appeal. Rule 2-16.3.

DEANNA ARRINGTON

VERSUS

JOSHUA H. ARRINGTON


**THIBODEAUX, Chief Judge, concurring.**

I agree with the result, though I view this case as one involving visitation, not custody, for the reasons articulated in my dissent in *Granger v. Granger*, 09-272 (La.App. 3 Cir. 11/10/09), 25 So.2d 162, *writ denied*, 09-2687 (La. 12/18/09), 23 So.3d 941.