# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-226

**GARY STOUTE AND LORI STOUTE**

**VERSUS**

**LUPE T. CAMACHO AND POLLY CAMACHO**

\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, DOCKET NO. 134792
HONORABLE LEWIS H. PITMAN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS**
**CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Charles G. Fitzgerald, and Gary T. Ortego, Judges.

**AFFIRMED AND RENDERED.**

**Lucretia Pecantte**
**Lucretia Pecantte & Associates**
**124 W. Washington Street, Suite B**
**New Iberia, LA  70560**
**(337) 374-1822**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Lupe T. Camacho and Polly Camacho**


**William Repaske**
**Landry, Watkins, Repaske & Breaux**
**211 E. Main Street**
**New Iberia, LA  70560**
**(337) 364-7626**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Gary Stoute and Lori Stoute**

**COOKS, Chief Judge.**

This litigation arose out of several disputes between neighbors, Lupe and Polly Camacho and Gary and Lori Stoute. On September 6, 2019, the Stoutes filed a Petition for Permanent Injunction and for Damages against the Camachos. The petition alleged the Camachos engaged in activities meant to harass the Stoutes in the peaceful possession of their property, including piping rainwater from the Camacho residence across their property to the boundary line with the Stoutes' property, causing excessive flooding of the Stoutes' property, eroding the footings of the Stoutes' fencing, shining lights at the Stoutes' house and other acts meant to harass the Stoutes.

On October 14, 2019, the Camachos filed an Answer and Reconventional Demand. In the reconventional demand, the Camachos alleged the Stoutes harassed them with numerous phone calls and texts, removing drainage pipes, calling the police unnecessarily, and interfering with the drainage of the Camachos' property.

A trial was held on December 18, 2020, following which the trial court took the matter under advisement. On February 23, 2021, the trial court on its own motion, appointed Jim Foret, a horticulturist, as an expert on the issue of water drainage to independently examine the situation. The Camachos and Stoutes were ordered to cooperate with Mr. Foret in his assessment of the dispute. Mr. Foret forwarded a report to the trial court on April 1, 2021. In his report, Mr. Foret described the situation and his proposed solution as follows:

> . . . it looks like these two painted themselves into the proverbial corner. There are not too many ways to go from here without ripping everything out an starting over.
>
> At some point the soil around [the] Camacho home settled and water pooling under the home (on piers) became an issue. Camacho installed gutters as a means of moving excess water away from his home. In order to enhance the gutters he extended the downspout on the Stoute , east side, to just behind [the] Camacho's crossties using a 3-4" flexible drain pipe on the soils surface, open ended at the crossties. This extra drainage water seems to be [the] point of contention. I did not observe

excessive water movement and soil erosion anywhere along the Stoute fence. I saw minor settling or erosion, but away from the open pipe.

In order to get the extension pipe to the property line it is passed under the driveway. It appears to me that this is not very efficient and it occurs to me that a different solution is be [sic] available that will remove this source of irritation to Stoute and allow Camacho to remove excess water from under his home. The west drainage ditch along [the] Camacho south line should handle that water without crossing the driveway by extending the gutter in that direction. The driveway being slightly higher would block the water movement to the east forcing it to follow the slope developed during the original turtle backing to the ditch along the Camacho south property line. From there it will drain to the west and then north towards the RR berm. I believe in low tech solutions. This may be one.

On May 7, 2021, the trial court issued a Judgment accompanied by written reasons for judgment. The trial court enjoined the parties from harassing each other, enjoined the Camachos from having exterior lights shining in the direction of the Stoutes' house "which is higher than the horizontal angle," and ordered the Camachos by June 30, 2021 "to relocate the rain water drainage from their house in conformity with the expert opinion of Jim Foret."

In the months following, the Stoutes believed the Camachos were not complying with the judgment and on August 10, 2021 filed a Motion and Order for Contempt. In that motion they specifically alleged the Camachos "have failed to abide [with the judgment], and in fact, have installed additional drain lines directing rainwater toward the Stoute property."

The Motion and Order for Contempt was heard on October 3, 2021. The trial court ordered the filing as a supplement to the expert's report, a screen shot of a text message from Mr. Foret concerning the Camachos' actions since the judgment:

Mr. Camacho did not follow my direction and our agreed upon solution to the drainage conflict. He, instead of developing a drainage swale half way between the property line and the driveway, placed a roof gutter on the soil surface from the out flow of his carport drain and the front ditch. He boxed it in with landscape timbers. Very neatly done but right along the property line. It is not visible to Stoute unless he goes looking for it. It works well, but not what we discussed and you agreed to.

3

At the conclusion of the hearing, the trial court rendered oral reasons for judgment, and made the following findings:

> . . . in it's judgment of May 7, 2021[the court] set a deadline of June 30, 2021 for the [Camachos] to complete the recommendations of Mr. Foret in his report. Court does not recall exactly the conversation with Jim Foret, the one in which Mr. Foret came away from the meeting feeling the deadline was flexible and conveyed that to the [Camachos]. Court believes Mr. Foret and the [Camachos] never had any disagreement with actions and always tried to follow his directions. Mr. Foret checked two weeks ago and all was to his satisfaction as to the part of the project that he was overseeing. The failure of the [Camachos] to complete the drainage until October 7, 2021 does not rise to the level of contempt.
>
> Now, the drainage piping depicted on [Stoutes'] Exhibit 2 was constructed after the trial on the merits, and Exhibit 3 photo sometime after 2 was taken when they replaced black piping with a white piping. The flow off this ten by ten roof was directed toward the boundary and is not connected to the approved Foret design. This drainage is to be removed as shown on Exhibit 2 and 3 to allow the water to free flow to the ground, thus the Court orders the removal of the gutters and drain pipe of the ten by ten roofing depicted on Exhibit 2 and Exhibit 3. This is to be done within thirty days of the date of judgment is signed.
>
> Court further orders that all seams and/or connections of the Foret approved piping be sealed for leaks. Once again to be done within thirty days of the date the judgment is signed. No encroachments of landscape timbers or other materials are allowed on the fence or bottom part of the [Stoutes'] fence. Once again any encroachments are to be removed within thirty days of the signing of this judgment.
>
> The placing of that drainage upon the ten by ten roof after the trial on this matter indicates the [Camachos] had a willful disregard of causing water to flow towards the boundary of their neighbor. Court therefore holds the [Camachos] in contempt for this action. [Camachos] are ordered to pay directly to the Attorney William Repaske attorney fees in the sum of Two Thousand Five Hundred Dollars. [Camachos] are to pay all court cost in this matter.

A judgment reflecting these rulings was signed on November 19, 2021. The Camachos appealed, asserting the following assignments of error:

1. The trial court erred by granting the Motion and Order for Contempt and finding the Camachos in Contempt of Court of the Judgment dated May 7, 2021.

2. The trial court erred by awarding attorney fees in the amount of $2,500.00 to the Stoute's attorney.

4

The Stoutes filed an answer to the appeal, asserting they will incur additional attorney fees as a result of the appeal, and requested an increase in the amount of attorney fees.

## ANALYSIS

### A. Finding of Contempt.

The judgment of May 7, 2021, specifically ordered the Camachos to "relocate the drainage from their house in conformity with the expert opinion of Jim Foret." In his expert opinion, Mr. Foret stated that the rainwater should be directed to the front of the Camacho property along the west side of the Camacho driveway. The facts established that rather than direct the rainwater as Mr. Foret instructed, the Camachos erected a new pipe which directed the rainwater towards the Stoutes' property line. Mr. Foret specifically noted that "Mr. Camacho did not follow my direction and our agreed upon solution to the drainage conflict."

The Camachos argue because the new pipe which directed rainwater towards the Stoutes' property was added after the May 7, 2021 judgment, they should not be held in contempt of court for their actions because the new piping could not have been the object of the May 7, 2021 judgment. We do not agree. The May 7, 2021 judgment clearly sought to prevent the Camachos from directing rainwater towards the Stoutes' property. Mr. Foret believed the "west drainage ditch along [the] Camacho south line should handle that water without crossing the driveway by extending the gutter in that direction." The Camachos actions in erecting new drainage piping which directed the rainwater towards the Stoutes' property line did not comply with the May 7, 2021 judgment and constituted an open and obvious intent to avoid its objective.

Pursuant to La.Code Civ.P. art. 224(2), constructive contempt is the "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court." "A trial court is vested with great discretion to determine whether a party should be

5

held in contempt for willfully disobeying a trial court judgment." *Barnes v. Barnes*, 07-27, p. 9 (La.App. 3 Cir. 5/2/07), 957 So.2d 251, 257 (citing *Fink v. Bryant*, 01-987 (La. 11/28/01), 801 So.2d 346). We find the trial court did not abuse its discretion in finding the Camachos in contempt of court for their wilful disobedience of the May 7, 2021 judgment.

### B. Attorney Fees.

The Camachos also argue the trial court erred in awarding attorney fees in this matter. In support of this argument, the Camachos cite *Dazet Mortgage Solutions LLC v. Faia*, 12-486 (La.App. 5 Cir. 4/10/13), 116 So.3d 711, *writ denied*, 13-1046 (La. 6/21/13), 118 So.3d 1095. In *Dazet*, the appellate court affirmed the trial court's judgment finding defendant in contempt of court, but vacated the portion of the judgment imposing $2,500.00 in attorney fees. However, the court in *Dazet* held it was vacating the award of attorney fees solely because "the trial judge did not impose a 'fine' as contemplated under La. R.S. 13:4611, [thus] we vacate that portion of the judgment imposing $2,500.00 in attorney fees." Since the rendition of *Dazet*, the Louisiana Legislature via La. Acts No. 132, § 2, amended La.R.S. 13:4611, to add paragraph (1)(g), which provides "[t]he court may award attorney fees to the prevailing party in a contempt of court proceeding provided for in this Section." Thus, as noted by the Louisiana Supreme Court in *Luv N' Care, Ltd. v. Jackel Int'l Ltd.*, 19-749, p. 9 (La. 1/29/20), ___ So.3d ___, "the attorney fees provision of Subparagraph (1)(g) is necessarily one of the *punishments* referenced by the first sentence of Paragraph (1), which a court is authorized to impose on *a person adjudged guilty of a contempt of court*." Accordingly, the trial court was authorized to award attorney fees in this matter.

The Stoutes have answered the appeal and request an increase in attorney fees for the work necessitated by this appeal. An award for additional attorney fees is proper for work necessitated by the appeal when an award for attorney fees is granted

at the trial level.  *Oracle 1031 Exchange, LLC v. Bourque*, 11-1133 (La.App. 3 Cir. 2/8/12), 85 So.3d 736, *writ denied*, 12-546 (La. 4/20/12), 85 So.3d 1272.  The Stoutes were awarded attorney fees in the trial court.  They have successfully defended the appeal by the Camachos.   We find an additional award of $1,500.00 is appropriate for the work necessitated by this appeal.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.  The judgment is amended to award additional attorney fees of $1,500.00 for the work performed on this appeal and appearance before this court.  All costs of this appeal are assessed against Appellees, Lupe and Polly Camacho.

**AFFIRMED AND RENDERED.**