Judgment rendered September 27, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,214-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| PATRICK GRAYSON, GRAYGULL HOLDINGS, L.L.C., AND CLASS ACT TRANSIT, L.L.C. | Plaintiffs-Appellees |

versus

| | |
|---|---|
| ALAN JEFFEREY GULLEDGE, KELLY ALDY, AND J&K OPERATIONS, L.L.C. | Defendants-Appellants |

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Jackson, Louisiana
Trial Court No. 36,055

Honorable Charles Glenn Fallin, Judge

* * * * *

| | |
|---|---|
| THE PESNELL LAW FIRM, APLC<br>By: J. Whitney Pesnell | Counsel for Appellants |
| LAW OFFICES OF RUSSELL A.<br>WOODARD, JR. LLC<br>By: Russell A. Woodard, Jr. | Counsel for Appellees |

* * * * *

Before COX, ROBINSON, and MARCOTTE, JJ.

**COX, J.**

This case arises out of the Second Judicial District Court, Jackson Parish, Louisiana. Patrick Grayson, individually and on behalf of Class Act Transit, LLC ("CAT") and Graygull Holdings, LLC ("GGH") (collectively referred to as the "Plaintiffs"), filed suit against Alan Jefferey Gulledge, Kelly Aldy, and J&K Operations, L.L.C. ("J&K") (collectively referred to as the "Defendants"). The trial court granted the Plaintiffs' motion for partial summary judgment against Gulledge on the issue of breach of fiduciary duty. Defendants now appeal the trial court's judgment. For the following reasons, we affirm the trial court's judgment.

## FACTS

On August 30, 2018, Grayson and Gulledge formed CAT and GGH in order to operate a commercial trucking business. They each have 50 percent ownership in CAT, which is registered in Nebraska. Grayson owns 85 percent of GGH and Gulledge owns the remaining 15 percent. GGH is registered in Louisiana. CAT and Reserve Equipment, Inc. ("Reserve") entered into a transportation services agreement on September 13, 2018.

On October 15, 2019, Grayson filed a criminal complaint against Gulledge with the Jackson Parish Sheriff's Office alleging that Gulledge had embezzled or stolen funds or property from CAT/GGH. On July 9, 2020, Grayson filed a criminal complaint with the Louisiana State Police making the same allegations of embezzlement/stolen funds and adding allegations of drug trafficking. Criminal charges were never filed against Grayson.

On December 9, 2019, Gulledge resigned as manager of CAT/GGH. On December 10, 2019, Gulledge was employed by Steven White to manage SS7, LLC ("SS7").

On January 6, 2020, Grayson, individually and on behalf of CAT and GGH, filed a petition for damages against Gulledge. The Plaintiffs asserted that Gulledge breached his fiduciary duties of trust, loyalty, and candor owed to them through various acts and omissions, including but not limited to self-dealing and mismanagement. According to the Plaintiffs, from June 2018 through November 2019, Gulledge incurred between $128,000 and $400,000 in expenses that were not reasonably attributable to CAT/GGH and grossly mismanaged the companies. They alleged that Gulledge's expenses were used for his personal benefit in the following ways: Gulledge withdrew over $70,000 in cash without receipts; Gulledge spent over $17,000 at Wal-Mart, Sam's Club, sporting goods stores, clothing stores, restaurants, liquor stores, and a strip club; Gulledge transferred $16,500 from CAT/GGH to his personal account and $14,650 from CAT/GGH to another business owned by Gulledge; Gulledge used company funds for dog-sitting fees, PayPal transfers, and CashApp transfers to individuals not associated with CAT/GGH; Gulledge used a CAT/GGH account to purchase a boat; Gulledge purchased approximately $10,000 in unleaded fuel, but the company vehicles do not use unleaded fuel; Gulledge wire-transferred large sums of money to a ComData[1] account without receipts to explain why the funds were disbursed; CAT/GGH accounts were overdrawn when Gulledge resigned; and, Gulledge spent CAT/GGH money on himself, his family, and friends, which caused multiple overdraft and insufficient funds fees.

The Plaintiffs alleged that Gulledge mismanaged CAT/GGH in the following ways: Gulledge failed to properly hire, train, and supervise

---

[1] ComData provides cash payments to drivers.

employees; Gulledge exhibited purposeful lack of upkeep on federally mandated electronic log equipment; Gulledge failed in multiple federal and state reporting requirements, including the federally mandated International Fuel Tax Agreement ("IFTA"); when Gulledge resigned, all company equipment loans were past due; Gulledge did not submit quarterly IRS payments or reports timely; Gulledge withdrew approximately $4,400 on his last day as "a portion of his capital investment," but Gulledge had not put any capital investment into the companies; Gulledge left all trucks dirty and with empty fuel tanks; Gulledge removed necessary chains, straps, and binders from the trucks; Gulledge switched good front tires from one truck with old, bald, dangerous tires; televisions and microwaves were missing from the large trucks; Gulledge left one Peterbilt 579 tractor sitting near Orlando, Florida, and one reefer trailer sitting outside Birmingham, Alabama, unattended and with no plan on returning them to the Quitman, Louisiana, area; Gulledge retained one Volvo tractor and a 3-car "wedge" trailer until "an appropriate arrangement has been made for his portion of the business to be negotiated"; and, Gulledge left the Plaintiffs' remaining vehicles on a lot owned by White in Simsboro, Louisiana, who was going to have the equipment impounded if it was not removed.

The Plaintiffs claimed that Gulledge concealed his self-dealing and mismanagement from Grayson; therefore, Grayson did not suspect any problems until August 2019. They stated that as a result of Gulledge's actions, Grayson's credit score has dropped from the high 800s to the 600s, which directly affects his personal and professional ability to obtain credit. They listed their damages as stolen funds, lost profits and earning capacity, attorney fees as authorized by law, court costs and legal interest, bad-faith

damages, and any other relief to which they may be entitled. The Plaintiffs asserted that they have causes of action against Gulledge for breach of fiduciary duty, fraud, unfair trade practices under LUTPA, conversion/theft, and breach of contract.

On February 25, 2020, Gulledge filed a separate action to dissolve and liquidate CAT and GGH in Jackson Parish. On February 26, 2016, Gulledge filed exceptions of vagueness and ambiguity, no right of action, no cause of action, and prescription. He asserted that the Plaintiffs' petition was vague and ambiguous because they did not plead the times or places where the alleged acts of malfeasance or breach of fiduciary duties occurred. He also stated that they did not distinguish between CAT and GGH, which are located in different states. He argued that the Plaintiffs do not clearly state who was defrauded, with whom the self-dealing occurred, the substance of the misrepresentations, and when the misrepresentations were made.

Gulledge argued that the petition does not state a right of action in favor of Grayson individually because a shareholder has no separate or individual right of action against third persons, including directors and officers of a corporation, for wrongs committed against or causing damage to the corporation. He stated that for a member to sue another member individually for breach of fiduciary duty, the breach must be grossly negligent and damage the suing member directly; he contended that Grayson did not allege any damage directly to himself that was caused by a breach of fiduciary duty.

Gulledge argued the petition did not state a cause of action against him because the Plaintiffs do not allege any contracts between the Plaintiffs and Gulledge and do not allege he was authorized to issue and sign checks

4

on the accounts of CAT/GGH. He pointed out that LUTPA limits private actions to customers and business competitors, and the Plaintiffs did not allege that they were customers or business competitors. Gulledge asserted that La. R.S. 51:1409 does not allow Grayson to bring representative claims on behalf of CAT/GGH. He argued that the Plaintiffs did not allege facts to show gross negligence. Gulledge asserted that although the Plaintiffs did not allege dates in which the self-dealing occurred, all actions arising more than one year prior to the filing of the suit have prescribed under La. R.S. 51:1409 and 12:1502.

On August 26, 2020, the Plaintiffs filed their opposition to Gulledge's exceptions. They argued that the vagueness exception was not well-founded because the petition did contain specific details, and the facts were beyond sufficient to support the claims asserted. They argued that Gulledge misstated the law by not quoting the portion of La. R.S. 12:1502(D), which provides for a two-year prescriptive period. They assert that their claims had not prescribed because the earliest date stated is June 2018 and their petition was filed January in 2020, which is within the two-year prescriptive period.

On September 23, 2020, the trial court signed its order denying all of Gulledge's exceptions. On October 2, 2020, Gulledge filed an answer and recoventional demand. He generally denied the allegations made against him. He stated that he submitted receipts for cash withdrawals and the purchases were made for business purposes. He admitted that he did transfer money from CAT/GGH to his personal or other business accounts, but those were for payments on loans he made to CAT/GGH. He explained that he used the CAT/GGH account to pay dog-sitting fees when he was out of town

5

on business and did not have anyone else to care for his dogs. He stated that he also used PayPal and CashApp to pay business-related expenses on behalf of CAT/GGH; one payment on PayPal or CashApp was made to an employee of his other business, but those funds were placed in the CAT account in advance of the transfer. Gulledge responded that he did use $411.90 from CAT to buy a boat, but those funds were part of a reimbursement to Gulledge for funds previously loaned to CAT for business operations.

In response to the unleaded fuel purchases, Gulledge stated that vehicles used by him, Justin Dailey, Patrick C. Grayson, Jimmy Culpepper, Damond Allen, and Ed Roddy did use unleaded fuel and these vehicles were used in connection with the business operations of CAT/GGH. He stated that money transferred to ComData was used to provide the drivers with money for fuel, truck washes, tolls, lumpers (load and unload reefer trailers), motel rooms, repairs, parts, and/or compensation. Gulledge stated that the receipts for ComData transfers have been and are still available. Gulledge admitted to charging one vacation trip to CAT/GGH with the permission of Grayson, and he charged CAT/GGH for personal expenses (gasoline, hotel, etc.) incurred while on business trips.

Gulledge admitted that he hired and supervised all employees of CAT/GGH, including an employee who he alleged embezzled funds and pawned company equipment. He stated that the pawned equipment was returned and the employee was arrested on drug charges. Gulledge explained that the E-log equipment had numerous defects and malfunctions, causing inaccurate reports. He stated that all IFTA reporting was completed every quarter except the last quarter of 2019, and Sharon Lee's Fuel Tax

6

Services was paid on September 25, 2019.  Gulledge stated that to the best of his knowledge, only one loan was past due at the time of his resignation.  He stated that he was unaware that quarterly payments to the IRS were required and was not instructed to send payments.  He further stated that when he received the IRS notice to seize property, he informed Grayson that the operating account had insufficient funds to cover the bill.

Gulledge admitted to withdrawing $4,400 from the CAT account before his resignation for a partial repayment of the loans made by him to CAT.  Gulledge denied that he was personally responsible for maintaining the cleanliness of the equipment and stated that was the responsibility of the truck driver.  He stated that the televisions and microwaves were located in the truck at the time it was parked on White's lot.  Gulledge admitted that one truck was left in Orlando, Florida, because the driver had been medically disqualified from driving and was working to get his license back.  He explained that two trailers were parked at a dealership in Alabama because they were not in use.  Gulledge stated he picked up one trailer and the other was waiting to be picked up by Grayson.

Gulledge stated that four of the five trucks he purchased for GGH were defective and GGH has filed suit against General Motors, LLC in East Baton Rouge Parish under docket number 688148.

Gulledge's reconventional demands against CAT and GGH are for the recovery of reasonable compensation for services rendered by him as Chief Executive Manager in the amount of $115,000.  He asserted that he used one room in his home as an office and is entitled to recover the fair rental value of the space used for the benefit of the companies.  He also asserted that he used his personal truck for business purposes while acting as Chief

7

Executive Manager and is entitled to recover the reasonable rental value of his truck.

Gulledge's reconventional demand against Grayson is for defamation. He asserted that in October 2019, Grayson began publishing false and defamatory statements to at least ten people, stating that Gulledge stole from CAT/GGH and converted assets from CAT/GGH for his personal benefit. He stated that Grayson falsely accused him of criminal activity and made reports to the Jackson Parish Sheriff's Office and Louisiana State Police. Gulledge claims that these defamatory communications were made with actual malice—knowledge of their falsity and reckless disregard for the truth. Gulledge alleged that he sustained injury and damage to his reputation and suffered severe mental anguish and pain as a result of the defamatory publications. Gulledge attached the certificate of organization for CAT and articles of incorporation for GGH.

On October 26, 2020, the Plaintiffs filed their answer, affirmative defenses, and exceptions to Gulledge's reconventional demands. They denied the allegations and asserted the following affirmative defenses: estoppel, unclean hands and fraud, failure to mitigate, extinguishment, failure of consideration, fault of others, and immunities. They pled the exceptions of vagueness, lack of procedural capacity, prescription/peremption, no cause of action, and no right of action.

On September 20, 2021, the Plaintiffs filed their first supplemental and amended petition. They added Kelly Aldy,[2] SS7, and J&K as defendants. They asserted that on November 6, 2019, Gulledge emailed a

---

[2] Aldy is later stated to be Gulledge's wife.

8

business plan to Reserve outlining his plans for a competing trucking company to obtain Reserve's business. They alleged that from late October 2019 through December 9, 2019, Gulledge met with White and SS7's bankers, insurance agency, and fuel providers to discuss his joining SS7. Grayson asserted that all of these communications were intentionally concealed from him. The Plaintiffs asserted that on December 8, 2019, Gulledge assumed SS7's tax liability and the following day worked on plans to get Reserve to move its business to SS7 before resigning from CAT/GGH in the afternoon. They stated that Gulledge admitted in his deposition that the December 9, 2019, email at 4:19 p.m. from himself to Grayson was the moment he resigned as "manager" from both CAT and GGH.

The Plaintiffs stated that based on information from the Louisiana Secretary of State, Gulledge now owns 49 percent of SS7 and Aldy owns 51 percent, and any acts or omissions of Gulledge are imputed equally to Aldy and SS7. They alleged:

> [O]n or about April of 2021, Gulledge and Aldy created a new entity- J&K - which they use to carry out the illicit activities described above. Specifically, once Gulledge and Aldy learned that Plaintiffs had identified SS7 as a culprit in diverting Reserve's business, they created J&K in effort to create another artificial layer of separation between themselves and SS7 while continuing to haul freight for Reserve.

The Plaintiffs claimed that they have suffered past damages of $2 million from the Defendants' wrongful solicitation of Reserve, and the damages continue to increase with every load that is hauled by SS7 instead of CAT/GGH. In addition, the actions of the Defendants have forced GGH into bankruptcy proceedings, and those damages are owed and payable from the Defendants. The Plaintiffs alleged they have claims for RICO violations,

fraud and breach of contract/fiduciary duty, reckless disregard and interference with contract, and conspiracy.

On November 3, 2021, the Defendants responded to the supplemental and amended petition by reiterating their exceptions of vagueness and ambiguity, no right of action, and no cause of action.

The Plaintiffs moved for partial summary judgment on the issue of liability against Gulledge. They argued that there was no genuine issue of material fact as to whether Gulledge owed a fiduciary duty to the Plaintiffs and whether Gulledge breached that fiduciary duty. The Plaintiffs attached copies of CAT/GGH operating agreements; Gulledge's deposition; the business plan sent from Gulledge to SS7; Gulledge's text messages as he made his move from CAT/GGH to SS7; the transportation services agreement between Reserve and CAT; and the transportation services agreement between Reserve and SS7.

The Defendants filed their cross-motion for partial summary judgment, arguing there are no material facts in dispute as to the following: theft or conversion of property; diversion and/or loss of business income or opportunity from Reserve; damages resulting from RICO violations; and, damages resulting from alleged interference by Gulledge with CAT's contract with Reserve. They requested that their partial MSJ be sustained and the Plaintiffs' claims be dismissed with prejudice. The Defendants attached the following: Gulledge's affidavit; the business filings of CAT and GGH; Gulledge's resignation letter; the business plan Gulledge prepared; text messages between Gulledge and Reserve employees; emails between the attorneys of record regarding discovery; business filings of Grayson

Logistic Solutions, LLC and Absolute Nursing Care of LA, LLC;[3] a transportation agreement between England Logistics, Inc. and CAT dated December 24, 2019; a waiver of liability and indemnification agreement between House of Raeford Farms of Louisiana, LLC and CAT dated December 19, 2019; a motor carrier/broker agreement between LAD Logistics, Inc. and CAT dated January 17, 2020; the transportation services agreement between Reserve and CAT dated September 13, 2018; the transportation services agreement between Reserve and SS7 dated December 10, 2019; a transportation services agreement between Reserve and SS7 dated May 1, 2020; an act of sale of assets from White and SS7 to Gulledge dated March 31, 2021; loan documents between J&K and b1BANK;[4] and, a transportation services agreement between Reserve and J&K dated June 22, 2021.

On January 4, 2022, the Plaintiffs filed an opposition to the Defendants' exceptions. They contended that these exceptions were previously denied by the trial court.

On May 12, 2022, a hearing was held on the Defendants' exceptions, where the trial court denied the exceptions. On July 19, 2022, the trial court signed its judgment denying the Defendants' exceptions of vagueness and ambiguity, no right of action, and no cause of action.

On July 19, 2022, the trial court heard arguments on the motions for summary judgment filed by both parties. The trial court stated in its oral reasons that Gulledge stayed on as manager of CAT/GGH after the criminal allegations were made, even though he alleges that he could no longer work

---

[3] Grayson is an officer/member of both of these entities.

[4] This is the exact spelling listed on their website and official filings.

11

with Grayson. The trial court opined that Gulledge should have resigned at that time, but Gulledge remained with the companies and chose to actively seek out their number one customer for his new company. For these reasons, the trial court found that he breached his fiduciary duties. On August 10 and 17, 2022, the trial court signed two judgments granting the Plaintiffs' motion for summary judgment on the issue of liability and denying Gulledge's cross-motion for summary judgment. The trial court reserved the issue of damages for trial. At the direction of this Court, the trial court signed a revised judgment stating that the Plaintiffs' partial summary judgment on the issue of liability for duty and breach was granted against Gulledge only, reserving the issue of damages for trial; the Defendants' cross MSJ was denied; and, all other claims and defenses were reserved for trial. Gulledge now appeals.

## DISCUSSION

In this appeal, Gulledge alleges the trial court erred in granting summary judgment in Grayson's favor. He claims the criminal complaints made by Grayson terminated his fiduciary duties. He also claims the transportation services agreement between CAT/GGH and Reserve did not obligate Reserve to use CAT/GGH. He asserts that the Operating Agreements do not contain noncompete or non-solicitation clauses. Finally, he argues that Grayson's petition, as supplemented and amended, does not state a cause of action against him for "reckless disregard and interference" with a contract under La. R.S. 12:1314(B).

*No Cause of Action*

Gulledge asserts that the petition, as amended and supplemented, does not state a cause of action against him for "reckless disregard and

12

interference." He also argues that Grayson could not bring a cause of action to recover damages against the Defendants.

The peremptory exception of no cause of action is set forth in La. C.C.P. art. 927(A)(5). It tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. *Garsee v. Sims*, 54,832 (La. App. 2 Cir. 1/11/23), 355 So. 3d 1149, *writ denied*, 23-00407 (La. 6/21/23), 362 So. 3d 428; *Sharp v. Melton,* 53,508 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1135; *Pesnell v. Sessions*, 51,871 (La. App. 2 Cir. 2/28/18), 246 So. 3d 686. The purpose of the exception of no cause of action is not to determine whether the plaintiff will prevail at trial but to ascertain if a cause of action exists. *Sharp v. Melton, supra*. A "cause of action," when used in the context of the peremptory exception of no cause of action, refers to the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. *Id*. The exception is triable on the face of the petition, and for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. *Fink v. Bryant*, 01-0987 (La. 11/28/01), 801 So. 2d 346; *Sharp v. Melton, supra*.

No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. The burden of demonstrating that the petition states no cause of action is upon the mover. *Wright v. Louisiana Power & Light*, 06-1181 (La. 3/9/07), 951 So. 2d 1058; *Sharp v. Melton, supra*. All reasonable inferences are made in favor of the nonmoving party in determining whether the law affords any remedy to the plaintiff. *Villareal v. 6494 Homes, LLC*, 48,302 (La. App. 2 Cir. 8/7/13), 121 So. 3d 1246. An exception of no cause of

13

action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. *Sharp v. Melton, supra.*

If the petition states a cause of action on any ground or portion of the demand, the exception should generally be overruled. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. *Badeaux v. Southwest Computer Bureau, Inc.*, 05-0612 (La. 3/17/06), 929 So. 2d 1211; *Sharp v. Melton, supra.*

An appellate court's review of a trial court's ruling sustaining an exception of no cause of action is de novo because the exception raises a question of law, and the trial court's decision is based only on the sufficiency of the petition. *Fink v. Bryant, supra.* The essential question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's favor, the petition states any valid cause of action for relief. *Wright v. Louisiana Power & Light, supra.*

The Operating Agreements for CAT/GGH are virtually identical, with the exceptions of membership percentages and the state in which they are registered. The Operating Agreements provide, in pertinent part, for the voting process of managers and the Chef Executive Manager, a list of managerial duties, and states the manager will not be liable for acts or omissions "which may cause or result in loss or damage to the Company or the Members if done in good faith to promote the best interest of the Company[.]" Both Operating Agreements provide a list of managers in "Exhibit 1," which states: "By a majority vote of the Members the following Managers were elected to operate the Company pursuant to ARTICLE 4 of

14

the Agreement[.]" Gulledge is listed first as the Chief Executive Manager and then Grayson is listed with the title of President. The Operating Agreement then provides, "The above listed Manager(s) will serve in their capacities until they are removed for any reason by a majority vote of the Members as defined by ARTICLE 4 or upon their voluntary resignation." Article 4 of the Operating Agreement provides for management but does not specifically outline the process for removing a manager. Article 4 provides, "By a vote of the Members holding a majority of the capital interests in the Company, as set forth in Exhibit 2 as amended from time to time, shall elect so many Managers as the Members determine, but no fewer than one, with one Manager elected by the Members as Chief Executive Manager."

La. R.S. 12:1314 provides:

A. Subject to the provisions of R.S. 12:1315, a member, if management is reserved to the members, or manager, if management is vested in one or more managers pursuant to R.S. 12:1312:

(1) Shall be deemed to stand in a fiduciary relationship to the limited liability company and its members and shall discharge his duties in good faith, with the diligence, care, judgment, and skill which an ordinary prudent person in a like position would exercise under similar circumstances. Nothing contained in this Section shall derogate from any indemnification authorized by R.S. 12:1315.

(2) In discharging his duties, shall be fully protected in relying in good faith upon the records of the limited liability company and upon such information, opinions, reports, or statements presented to the limited liability company, the members, managers, or any committee thereof by any of the limited liability company's members, managers, employees, or by any committee of the members or managers, or by any legal counsel, appraiser, engineer, including a petroleum reservoir engineer, or independent or certified public accountant selected with reasonable care by the members, managers, any committee thereof, any agent having the authority to make such selection, or by any other person as to matters the member, if management is reserved to the members, or manager, if management is vested in one or more managers pursuant to

15

R.S. 12:1312, reasonably believes are within such other person's professional or expert competence and which person is selected with reasonable care by the members, managers, any committee thereof, or any agent having the authority to make such selection.

(3) Is not protected by Paragraph (2) of this Subsection if he has knowledge concerning the matter in question that makes reliance otherwise permitted by Paragraph (2) of this Subsection unwarranted.

(4) Shall not be liable for any action taken on behalf of the limited liability company or any failure to take any action if he performed the duties of his office in compliance with this Section.

(5) Shall account to the limited liability company and hold as trustee for it any profit or benefit derived by him, without the informed consent of a majority of the uninterested members in accordance with R.S. 12:1318(C), from any transaction connected with the conduct or winding up of the limited liability company or from any personal use by him of its property unless he proves under strict judicial scrutiny the fairness of the transaction to the limited liability company.

B. Notwithstanding the provisions of Subsection A of this Section, a member or manager shall not be personally liable to the limited liability company or the members thereof for monetary damages unless the member or manager acted in a grossly negligent manner as defined in Subsection C of this Section, or engaged in conduct which demonstrates a greater disregard of the duty of care than gross negligence, including but not limited to intentional tortious conduct or intentional breach of his duty of loyalty.

C. As used in this Section, "gross negligence" shall be defined as a reckless disregard of or a carelessness amounting to indifference to the best interests of the limited liability company or the members thereof.

D. A member or manager who makes a business judgment in good faith fulfills the duty of diligence, care, judgment, and skill under Subsection A of this Section if the member or manager:

(1) Does not have a conflict of interest with respect to the subject of the business judgment.

(2) Is informed with respect to the subject of the business judgment to the extent the member or manager reasonably believes to be appropriate under the circumstances.

(3) Rationally believes that the business judgment is in the best interests of the limited liability company and its members.

E. A person alleging a breach of the duty of diligence, care, judgment, and skill owed by a member or manager under Subsection A has the burden of proving the alleged breach of duty, including the inapplicability of the provisions as to the fulfillment of the duty under Paragraph A(2) and Subsection D, and, in a damage action, the burden of proving that the breach was the legal cause of damage suffered by the limited liability company.

The petition and amended petition allege that Gulledge breached his fiduciary owed to the LLC and its members by failing to maintain records, failing to pay loans and expenses, and using LLC money for personal expenses, among other allegations. The Plaintiffs further alleged that Gulledge breached his fiduciary duty by soliciting Reserve for the benefit of SS7 while he was still managing CAT/GGH. They state that this shows his reckless disregard for CAT/GGH's business in violation of La. R.S. 12:1314(B).

La. R.S. 12:1314 states that a manager shall discharge his duties in "good faith, with the diligence, care, judgment, and skill which an ordinary prudent person" would exercise. It further states that a manager will not be held personally liable unless he acted in a grossly negligent manner. Gross negligence is defined as "a reckless disregard of or a carelessness amounting to indifference to the best interest of the [LLC] or the members[.]" La. R.S. 12:1314(C).

Based on the facts alleged in the petition, the duties placed on managers in La. R.S. 12:1314, and the exculpation paragraph in the Operating Agreements, we find that the Plaintiffs have stated a cause of action. At a minimum, they have sufficiently alleged Gulledge's reckless

17

disregard to the best interest of CAT/GGH and its members through self-dealing, mismanagement of funds, and soliciting Reserve's business from CAT/GGH to SS7 while managing CAT/GGH. This assignment of error lacks merit.

As to Gulledge's argument that Grayson is not a manager of CAT/GGH and unable to bring suit, we disagree. Grayson is clearly listed as a manager of CAT/GGH in the Operating Agreements and, therefore, able to bring suit on their behalf.

We affirm the trial court's ruling denying the Defendants' exception of no cause of action.

*Transportation Services Agreement*

Gulledge argues the trial court erred in its construction of the transportation services agreement between CAT and Reserve because Reserve was not obligated to use CAT for its transportation needs. We do not find this holding or issue in the record from the lower court. If this suit were for the enforcement of a contract between CAT and Reserve, Reserve would be a necessary party. Instead, the Plaintiffs brought suit against the Defendants, not Reserve, for breach of fiduciary duty. The business between Reserve and CAT is mentioned only because Gulledge solicited Reserve's business on behalf of SS7 while still managing CAT/GGH. The transportation services agreement shows that Reserve was a customer of CAT while Gulledge was the manager. The trial court did not hold that Reserve was contractually required to use CAT for its transportation needs or breached its duty to use CAT. Therefore, this argument lacks merit.

*Motion for Summary Judgment*

A de novo standard of review is required when an appellate court considers rulings on motions for summary judgment, and the appellate court uses the same criteria that governed the district court's determination of whether summary judgment was appropriate. *J & L Oil Co. v. KM Oil Co., LLC*, 51,898 (La. App. 2 Cir. 2/28/18), 247 So. 3d 147; *Creek Mgmt., L.L.C. v. Unopened Succession & Unknown Heirs or Legatees of Williams*, 51,392 (La. App. 2 Cir. 5/17/17), 223 So. 3d 1194, *writ denied*, 17-1252 (La. 10/27/17), 228 So. 3d 1222. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4).

It is undisputed that Gulledge has been a member and manager of CAT and GGH since August 30, 2018. Gulledge admitted in his deposition that while he was a manager of CAT/GGH, he owed a fiduciary duty to the companies and its members. Neither the law nor the Operating Agreements provide that a fiduciary duty ends upon the filing of a criminal complaint. The Operating Agreement states that a manager will continue to serve until he is removed by vote or voluntarily resigns. Nothing in the record indicates that there was ever a vote to remove Gulledge as manager, and this Court will not unilaterally make the leap to equate a criminal complaint to a vote of removal. As noted by the trial court, Gulledge could have resigned from

19

his position or sought to dissolve the companies after the complaint was filed, but he chose to stay with CAT/GGH and keep his managerial position. As long as Gulledge was a manager of CAT/GGH, he owed a fiduciary duty to the LLC and its members. Therefore, we next analyze whether Gulledge breached his fiduciary duty before he resigned from CAT/GGH.

We agree with Gulledge's contention that the Operating Agreements do not contain a "noncompete" or "non-solicitation" clause in compliance with La. R.S. 23:921. However, under La. R.S. 12:1314, Gulledge owed a fiduciary duty to CAT/GGH and its members while he was still the manager. Therefore, this is not an issue of whether he violated a "noncompete" clause, but rather, the issue is whether he breached his fiduciary duty by acting in a manner that amounted to "gross negligence" or "a reckless disregard of or a carelessness amounting to indifference to the best interests of the limited liability company or the members thereof."

Gulledge admitted in his deposition that between November 2019 and December 8, 2019, he communicated with White, the owner of SS7, in person, by phone, and through text message. He agreed that he spoke with White about SS7's "factoring" company, truck paint colors, truck VIN numbers, MC and DOT numbers, fuel cards, and federal tax ID number, as well as Gulledge assuming SS7's tax liability. Although he was unwilling to agree with whether his actions hurt CAT/GGH and helped SS7, Gulledge stated that Reserve was aware of talks with White regarding SS7, and he discussed a "revised rate agreement" with employees from Reserve. Gulledge stated that he informed the employees of Reserve that he would be leaving CAT/GGH and going to SS7. When questioned if he informed them before he resigned on December 9, 2019, Gulledge stated, "I told him on the

20

8th, roughly. I'm not going to quote the exact date. Roughly the 8th. I don't really remember the exact dates."

Based on this deposition testimony, Gulledge, while still managing CAT/GGH, began making a move to another trucking company and informed CAT/GGH's number one customer of his move. Gulledge stated that he stayed with the companies after the criminal complaints were filed in order to try to make the best of things; however, his actions prove otherwise. Gulledge's conversations with White about SS7's financials and operating information, as well as his agreement to assume SS7's tax liability show that he acted with a careless indifference to the best interest of CAT/GGH. Gulledge then informed CAT/GGH's number one customer, Reserve, of his move to SS7, and on December 10, 2019, Reserve signed a transportation agreement with SS7. Gulledge clearly acted in his own best interest with no regard for the companies he managed. Had Gulledge resigned from his management position prior to lining up a new position with SS7 or informing Reserve of his upcoming move, our analysis may have been different. Gulledge's actions amount to gross negligence and a breach of his fiduciary duty to CAT/GGH and its members.

Therefore, we affirm the trial court's ruling granting Grayson's partial MSJ on the issue of liability for breach of fiduciary.

## CONCLUSION

For the reasons articulated above, we affirm the judgment of the trial court. Costs of this appeal are assessed against the Defendants-Appellants.

**AFFIRMED.**

21