801 So.2d 346 (2001)
Connie Jo FINK
v.
Stephen BRYANT.
No. 2001-CC-0987.
Supreme Court of Louisiana.
November 28, 2001.
*347 Jack L. Dveirin, New Orleans, Counsel for Applicant.
Michael S. Zerlin, Gretna, Counsel for Respondent.
KNOLL, Justice.[*]
At issue in this case is whether the trial court erred in granting defendant's peremptory exception of no cause of action on the grounds that the executory child support judgment against him could not be enforced through a rule for contempt. For the following reasons, we reverse the lower courts and find that a cause of action exists.

FACTS
Connie Jo Fink and Stephen Bryant were married on December 31,1987. On October 18, 1988, a child was born of this marriage. Although the parties later obtained a legal divorce on June 12, 1998, neither child custody nor child support was litigated at that time. On March 5, 1999, Fink filed a petition, in proper person, to establish custody and child support. In her petition, Fink asserted that the minor child was in her custody and that she had the primary care of this child since February 1996 when she and Bryant physically separated.
Later, on April 5, 1999, Fink, now represented by counsel, filed an amended petition for custody and child support. At that time, the trial court set a hearing for April 22, 1999. On April 6, 1999, Bryant filed responsive pleadings and a reconventional demand, seeking custody of the minor child and child support. The record shows that this hearing date was upset "to give the parties an opportunity resolve [the legal] issues" and was not rescheduled until February 22, 2000. On *348 March 10, 2000, the trial court entered judgment awarding Fink child support payments of $495 a month retroactive to March 5, 1999, the date she filed her original petition for support. The judgment recognized that Bryant had paid $1,550 child support between March 5, 1999 and March 9, 2000, and credited him for child support in that amount.[2] Notwithstanding, the trial court determined that Bryant had not paid any child support for March, May, June, July, and December 1999, as well as January, February, and March 2000. Accordingly, the judgment decreed, "[t]hat the child support arrearage due Connie Fink from Stephen Bryant in the amount of FOUR THOUSAND EIGHT HUNDRED EIGHTY-FIVE AND NO/ 100 ($4,885.00) is made executory immediately, together with legal interest until paid, in accordance with law." Thereafter, commencing with April 2000, the trial court ordered Bryant to pay monthly support of $507 and signed an immediate income assignment from Bryant's employer directly to Fink.
Counsel for Fink wrote Bryant's attorney on April 10, 2000, asking how Bryant intended to pay the child support arrearage. When no payments were forthcoming during the next nine months, Fink filed a rule on January 10, 2001, against Bryant seeking to find him in contempt of court for his failure to pay the $4,885 arrearage made executory immediately in the judgment of March 10, 2000. On February 1, 2001, Bryant filed a peremptory exception, urging that Fink had no cause of action to file a contempt rule for failure to pay an executory money judgment.
The trial court granted Bryant's peremptory exception of no cause of action on February 15, 2001. Fink then applied for supervisory writs to the Court of Appeal, Fifth Circuit. On April 2, 2001, the appellate court denied Fink's writ application, stating, in part:
[T]he judgment did nothing more than order the respondent to pay the arrearages, in accordance with law, as a money judgment. The law does not provide for the collection of this money by use of contempt proceedings. Judgments such as this must be collected as any other money judgment collected.
Fink v. Bryant, 01-C-293, slip op. at 1 (La.App. 5 Cir. 3/16/01).
We granted Fink's writ application to review the propriety of the lower courts' judgments. Fink v. Bryant, 01-CC-0987 (La.6/15/01), 793 So.2d 205.

DISCUSSION
Fink contends that contempt proceedings are sanctioned as a legal remedy for failure to pay child support arrearages that have been made executory. In contrast, Bryant contends that the executory child support judgment against him is an ordinary money judgment governed by LA. CODE CIV. PROC. ANN. arts. 2251-2456 and is collectible only through the procedures established for the collection of money judgments.
The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 94-2015 (La.11/30/94), 646 So.2d 885. The peremptory exception of no cause of action is designed to test the legal sufficiency of *349 the petition by determining whether plaintiff is afforded a remedy in law based on the facts alleged in the pleading. Everything on Wheels Subaru, Inc. v. Subaru South, 616 So.2d 1234 (La.1993). No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. LA.CODE CIV. PROC. ANN. art. 931. The exception is triable on the face of the papers and for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. City of New Orleans v. Board of Commissioners, 93-0690 (La.7/5/94), 640 So.2d 237. In reviewing a trial court's ruling sustaining an exception of no cause of action, the appellate court and this Court should subject the case to de novo review because the exception raises a question of law and the trial court's decision is based only on the sufficiency of the petition. City of New Orleans, 640 So.2d at 253. Simply stated, a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. Haskins v. Clary, 346 So.2d 193 (La.1977).
LA.CODE CIV. PROC. ANN. arts. 221-227 and LA.REV.STAT. ANN. § 13:4611 regulate contempt procedure in civil cases. LA. CODE CIV. PROC. ANN. art. 224(2) provides in pertinent part: "[a]ny of the following acts constitutes a constructive contempt of court: ... (2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court." LA.REV.STAT. ANN. § 13:4611(1)(d) further provides in pertinent part:
(1) The supreme court, the courts of appeal, the district courts, family courts, juvenile courts, and the city courts may punish a person adjudged guilty of a contempt of court therein, as follows:
* * *
(d) For any other contempt of court, including disobeying an order for the payment of child support ... by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both.
The support obligation imposed on a parent is firmly entrenched in Louisiana law and is a matter of public policy. Brown v. Taylor, 31,352 (La.2/26/99), 728 So.2d 1058, 1061. The obligation to nourish and rear one's children has its source in a person's status as father or mother. Hogan v. Hogan, 549 So.2d 267, 271 (La. 1989). Each parent owes an obligation to support, maintain, and educate his or her children in proportion to his or her resources. LA. CIV.CODE ANN. art. 227; Stogner v. Stogner, 98-3044 (La.7/7/99), 739 So.2d 762. Neither equity nor practical inability to pay overrides this state's child support policy or allows a parent to avoid payment of his or her share of the child support obligation where the inability arises solely from that parent's own neglect and failure. State v. Reed, 26,896 (La.App. 2 Cir. 6/21/95), 658 So.2d 774, 777.
A parent's child support obligation is a primary, continuous obligation. CHRISTOPHER L. BLAKESLEY, LOUISIANA FAMILY LAW § 16 .02, at 16-5 (1997). In Hogan, we discussed the issue of retroactivity as it relates to child support awards. Finding that retroactivity is intrinsic to the concept of child support under Louisiana's civilian tradition, we stated that Louisiana law "abhors a gap in the support of one in need," and that under our legislative scheme, the substantive right to support, whether it be a spouse's or a child's, "clearly begins, fluctuates and ends in accordance with his needs and the debtor's ability to pay." Hogan, 549 So.2d at 272-273. *350 Accordingly, we observed that it is in that light that the Legislature provided for retroactive child support awards dating from judicial demand, pursuant to LA.REV. STAT. ANN. § 9:315.1. As observed in State Through Dept. of Health & Human Resources in Interest of Lymuel v. Duvigneaud, 97-0988 (La.App. 4 Cir. 12/10/97), 704 So.2d 398, "the retroactivity [under Louisiana's theory of support] is not in the nature of a penalty, but merely a judicial recognition of pre-existing entitlement." Duvigneaud, 704 So.2d at 402. Only practicality postpones the effective date of the obligation to pay child support to the date a court orders that payment. Id.
Correlatively, this state has placed a high priority on the enforcement of child support obligations. In this regard, a brief survey of various legislative enactments shows that numerous tools have been provided for the enforcement of child support orders: e.g., the court may issue "an order of suspension of a license [to operate a motor vehicle] or licenses of any obligor who is not in compliance with an order of child support," LA.REV.STAT. ANN. § 9:315.32; in addition to driver's licenses, the Legislature has authorized the suspension of certain professional, occupational, business, industrial, hunting, and fishing licenses of individuals who are "not in compliance with a court order of child support," LA.REV.STAT. ANN. §§ 9:315.30 315.35, 32:432, 37:2952, 56:647. In a like vein, lottery prizes may be withheld, LA. REV.STAT. ANN. § 47:9026, state and federal income tax refunds may be intercepted, LA.REV.STAT. ANN. § 46:236.1, and newspapers may publish a list of individuals who have been found in contempt of court for failure to comply with a support order enforced by the Department of Social Services, LA.REV.STAT. ANN. § 46:236.6(F).
Against that doctrinal backdrop, we find that although the parent to whom the child support obligation is owed may pursue enforcement of the personal obligation to pay child support through ordinary civil remedies, it is also clear that Louisiana law specifically provides that disobedience of a court order for the payment of child support is an express ground for which a court can hold a delinquent party in contempt of court. LA.REV.STAT. ANN. § 13:4611(1)(d); see Ourso v. Ourso, 490 So.2d 545 (La.App. 4 Cir.1986); see also Brown, 728 So.2d at 1061. Although the judgment of March 10, 2000, fixed the amount of arrearages and made it executory immediately, it is inconsequential that the judgment did not order payment at a specific time or establish a payment plan. What is significant is that the judgment constituted an order for payment of a specific sum of child support and created an obligation for which Bryant was liable. As such, Bryant's failure to pay this judicially established child support obligation, even as late as ten months post-judgment, brought the contempt provisions of LA.REV. STAT. ANN. § 13:4611(1)(d) into play.
Contempt, in the setting of delinquent child support requires the trial judge to determine that a party's disobedience of the court's support order constitutes a parent's willful or deliberate refusal to perform an act which was within the power of the parent to perform. LA. CIV. CODE ANN. art. 224(2) and LA.REV.STAT. ANN. § 13:4611(1)(d). In this regard, the trial court is vested with great discretion to determine whether a party should be held in contempt for willfully disobeying a trial court judgment. Kirby v. Kirby, 579 So.2d 508 (La.App. 4 Cir.), writ denied, 582 So.2d 1308 (La.1991).
Fink's rule for contempt alleges that an amount of arrearage was set in the judgment of March 10, 2000, that no payment on this arrearage has been forthcoming, and that this recalcitrance may constitute *351 wilful disobedience of the trial court's judgment. Considering our foregoing exegesis, we find that Fink has stated a cause of action in her rule against Bryant for contempt of court.

DECREE
For the foregoing reasons, the judgments of the lower courts are reversed and set aside. This matter is remanded to the district court to determine the merits of the contempt rule.
REVERSED AND REMANDED.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[2] Although the issues of child custody and visitation were not part of the March judgment, a hearing on these issues was held on September 8, 2000. A formal judgment on these issues was signed on October 12, 2000, granting joint custody of the minor child to Fink and Bryant and establishing visitation rights. These issues are not before us.