STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

24-247


THE SALVATION ARMY, BARRY J. SALLINGER
AND CYPRESS STREET PROPERTIES, LLC

VERSUS

UNION PACIFIC RAILROAD COMPANY,
CONSOLIDATED COMPANIES, INC., AND
SOUTHERN PACIFIC MOTOR TRUCKING COMPANY


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20160548
HONORABLE MICHELE S. BILLEAUD, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Charles G. Fitzgerald,
Judges.


REVERSED.

**Elizabeth Roche**
**Roche Law Firm**
**P.O. Box 959**
**Jennings, LA 70546**
**(337) 246-5179**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Cypress Street Properties, LLC**
    **Frank's House LLC**
    **The Salvation Army**
    **Barry J. Sallinger**
    **Edward P. Mouton**

**William W. Goodell, Jr.**
**The Goodell Law Firm**
**Post Office Box 52663**
**Lafayette, LA 70505**
**(337) 412-2724**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Cypress Street Properties, LLC**
    **Frank's House LLC**
    **The Salvation Army**
    **Barry J. Sallinger**
    **Edward P. Mouton**

**Amanda K. Klevorn**
**Korey A. Nelson**
**Natalie R. Earles**
**Lydia A. Wright**
**Patrick D. Murphree**
**Leila M. Abu-Orf**
**Burns Charest, LLP**
**365 Canal Street, Suite 1170**
**New Orleans, LA 70130**
**(504) 799-2845**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Frank's House LLC**
    **Barry J. Sallinger**
    **Cypress Street Properties, LLC**
    **Edward P. Mouton**
    **The Salvation Army**

**Joseph R. Joy, III**
**Joseph Joy & Assoc.**
**P. O. Box 4929**
**Lafayette, LA 70502**
**(337) 232-8123**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Frank's House LLC**
    **The Salvation Army**

**Edward P. Mouton**
**Cypress Street Properties, LLC**
**Barry J. Sallinger**

**Gordon J. Schoeffler**
**Attorney at Law**
**730 Jefferson Street**
**Lafayette, LA 70501**
**(337) 232-8123**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Edward P. Mouton**
**Barry J. Sallinger**
**Cypress Street Properties, LLC**
**The Salvation Army**
**Frank's House LLC**

**Mildred E. Methvin**
**Mildred E. Methvin L.L.C.**
**7414 Sardonyx Street**
**New Orleans, LA 70124**
**(337) 501-1055**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Edward P. Mouton**
**Cypress Street Properties, LLC**
**Barry J. Sallinger**
**The Salvation Army**
**Frank's House LLC**

**Steven J. Levine**
**David J. Topping**
**A. Paul LeBlanc, Jr.**
**Sophie Gray**
**Benjamin M. Anderson**
**Phelps Dunbar, LLP**
**400 Convention Street, Suite 1100**
**Baton Rouge, LA 70802-5618**
**(225) 346-0285**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Union Pacific Railroad Company**
**Southern Pacific Motor TruckingCompany**
**Centurylink Communications, LLC**

**John B. Shortess**
**Phelps Dunbar, LLP**
**400 Convention Street, Suite 1100**
**Baton Rouge, LA 70802-5618**
**(225) 346-0285**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Centurylink Communications, LLC**

**Jeffrey K. Coreil**
**Cliff A. Lacour**
**Neuner Pate**
**1001 West Pinhook, Suite 200**
**Lafayette, LA 70503**
**(337) 237-7000**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Consolidated Companies, Inc.**

**David J. Topping**
**Phelps Dunbar, LLP**
**Post Office Box 4412**
**Baton Rouge, LA 70821**
**(225) 346-0285**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Southern Pacific Motor Trucking Company**
    **Union Pacific Railroad Company**
    **Centurylink Communications, LLC**

**GREMILLION, Judge.**

Plaintiffs, the Salvation Army, Barry J. Sallinger, Cypress Street Properties, LLC, Edward P. Mouton, and Frank's House LLC, appeal the exception of no cause of action granted in favor of Defendants, Union Pacific Railroad Company, Southern Pacific Motor Trucking Company, and Centurylink Communications, LLC, relating to their claims under the Louisiana Environmental Quality Act (LEQA). For the following reasons, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed suit against Union Pacific and others in 2016 alleging damages related to water supply contamination. Parties were dismissed and added as the litigation proceeded, and the matter was remanded to state court in August 2017. Plaintiffs amended their petitions five times over the course of the litigation.

Defendants filed an exception of no cause of action on October 23, 2017. Following an August 15, 2022 hearing, the trial court granted Defendants' exception of no cause of action and dismissed Plaintiffs' suit on September 7, 2022. The trial court did not provide any oral or written reasons for judgment. Plaintiffs assign two errors:

1. The judgment granting the exception of no cause of action is contrary to law because, taking the Petition allegations as true, Defendants are in violation of Louisiana Water Control Law, L.R.S. 30:2076 and 2077.

2. The judgment granting the exception of no cause of action is contrary to law because none of the grounds in La.R.S. 30:2026 that limit a citizens's right to bring a Louisiana Environmental Quality Act citizen suit enforcement action are applicable.

# DISCUSSION

## *Peremptory Exception of No Cause of Action*

As used in the context of the peremptory exception, a "cause of action" refers to the operative facts which give rise to the plaintiff's right to judicially assert the action against the defendant. *Ramey v. DeCaire*, 03-1299, p. 7 (La.3/19/04), 869 So.2d 114, 118; *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.,* 616 So.2d 1234, 1238 (La.1993). The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. *Ramey*, at 7, 869 So.2d at 118; *Everything on Wheels Subaru, Inc.*, 616 So.2d at 1235. No evidence may be introduced to support or controvert the exception of no cause of action. LSA–C.C.P. art. 931. The exception is triable on the face of the pleadings, and, for purposes of resolving the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. *Fink v. Bryant*, 01-0987, p. 4 (La.11/28/01), 801 So.2d 346, 349; *City of New Orleans v. Board of Commissioners of Orleans Levee District*, 93–0690, p. 28 (La.7/5/94), 640 So.2d 237, 253. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. *Ramey*, at 7, 869 So.2d at 118.

Louisiana retains a system of fact pleading, and mere conclusions of the plaintiff unsupported by facts will not set forth a cause or right of action. *Montalvo v. Sondes*, 93-2813, p. 6 (La.5/23/94), 637 So.2d 127, 131. The burden of demonstrating that a petition fails to state a cause of action is upon the mover. *Ramey*, at 7, 869 So.2d at 119; *City of New Orleans*, at 28, 640 So.2d at 253. Because the exception of no cause of action raises a question of law and the district court's decision is based solely on the sufficiency of the petition, review of the district court's ruling on an exception of no cause of action is de novo. *Fink*, at 4, 801 So.2d at 349; *City of New Orleans*, at 28, 640 So.2d at 253. The pertinent inquiry is whether, in the light most favorable to the plaintiff, and with every doubt resolved in the plaintiff's favor, the petition states any valid cause of action for relief. *Ramey*, at 8, 869 So.2d at 119.

*Scheffler v. Adams and Reese*, *LLP*, 06-1774, pp. 4-5 (La. 2/22/07), 950 So.2d 641, 646-647.

Recently, in *State ex rel. Tureau v. BEPCO, L.P.,* 20-856 (La. 10/21/22), 351 So.3d 297, the supreme court analyzed a similar citizen suit authorized by statute in La.R.S. 30:16 if the Commissioner of Conservation fails to pursue violations of law relating to the conservation of oil or gas, or both. *See* La.R.S. 30:14. In *Tureau*, the

defendants filed an exception of no cause of action arguing that La.R.S. 30:14 and La.R.S. 30:16 apply only to violations involving "present, ongoing, or continuous conduct," and that they had ceased operations on the plaintiff's property years ago. The supreme court stated (emphasis added):

> The exception of no cause of action tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. *Kunath v. Gafford*, 20-1266 (La. 9/30/21), 330 So.3d 161, 166; *Ramey v. DeCaire*, 03-1299, pp. 7-8 (La. 3/19/04), 869 So.2d 114, 118-19. A court's decision on an exception of no cause of action is based solely on the sufficiency of the petition; no evidence may be introduced to support or controvert the exception. LSA-C.C.P. art. 931; *Ramey*, 03-1299 at p. 7, 869 So.2d at 118. Consequently, for the purpose of determining the issues raised by the exception, the well-pleaded facts of the petition must be accepted as true. *Cleco Corp. v. Johnson*, 01-0175, p. 3 (La. 9/18/01), 795 So.2d 302, 304; *Fink v. Bryant*, 01-0987, p. 3 (La. 11/28/01), 801 So.2d 346, 348. The pertinent question is whether, in the light most favorable to the plaintiff, and with every doubt resolved in the plaintiff's favor, *the petition states any valid cause of action for relief. Id.* Every reasonable interpretation must be accorded the language used in the *petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. Badeaux v. Sw. Comput. Bureau*, 05-0612, p. 7 (La. 3/17/06), 929 So.2d 1211, 1217. The burden of demonstrating that a petition fails to state a cause of action is on the mover, and a petition should be dismissed for failure to state a cause of action only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. *Fink*, 01-0987 at p. 4, 801 So.2d at 349.

> Tureau's original petition alleged that his property has been contaminated as a result of the oil and gas exploration and production activities of the defendants and/or their predecessors in interest. Specifically, the petition alleges that defendants violated various applicable conservation laws and regulations by failing to close and/or properly close unlined earthen pits. The petition further alleges that defendants "are violating Statewide Order 29-B and other regulations and orders of the Louisiana Department of Natural Resources and the Office of Conservation," by failing to remediate the property and contamination therein to the minimum standards required under the law. Specifically, the petition alleges that, "such violations are deemed ongoing violations until the law has been complied with," and that Tureau is entitled to injunctive relief under LSA-R.S. 30:16 "for any and all past or present violations ... no matter when such violations occurred." Further, the first supplemental and amending petition states that:

3

Petitioner alleges that the parties made defendants in this petition are currently violating Statewide Order 29-B and other regulations and orders of the Louisiana Department of Natural Resources and Office of Conservation by allowing contaminant exceedences to remain on the Tureau property and by failing to remediate the Tureau property to the standards set forth [in] Statewide Order 29-B and other applicable regulations and orders. Petitioner herein seeks the following mandatory and prohibitive injunctions: (1) ordering that the defendants named in this petition remediate the environmental damages to the Tureau property caused by oil and gas exploration and production activities to a level that complies with applicable regulations and orders, including, but not limited to, Statewide Order 29-B; and (2) restraining the defendants named in this petition from further violating, or threatening to violate, applicable regulations and orders, including, but not limited to, Statewide Order 29-B.

Under the legal principles and standards of review applicable at this stage of the proceedings, wherein the narrow issue before this court is whether the petition states a cause of action, and taking the allegations of the petition as true, as we must, *we are constrained to overrule the exception*. See *Global Mktg. Sols., LLC v. Blue Mill Farms, Inc*, 18-0093 (La. App. 1 Cir. 11/6/18), 267 So.3d 96 (reversing the district court's dismissal of a LSA-R.S. 30:16 suit for injunctive relief for failure to state a cause of action, finding that, insofar as the plaintiff alleged that *"defendants ... are violating Statewide Order 29-B ... by failing to remediate the property," and that said failure to remediate was ongoing, the plaintiff made allegations sufficient* to state a cause of action for injunctive relief under LSA-R.S. 30:16); see also *Rich Land Seed Co. v. BLSW Pleasure Corp*., 2022 WL 2163824, at \*17-20 (W.D. La. 5/31/22) (denying an exception of no cause of action when the petition alleged that unplugged or improperly plugged wells and "open" production storage pits remained on plaintiff's property and represented continuing violations of the conservation laws and regulations for which the plaintiff enjoyed a right to relief under LSA-R.S. 30:16.)

Moreover, *insofar as defendants argue that their failure to remediate soil and/or groundwater contamination to the minimum required standards does not, in and of itself, constitute a violation of a conservation law, rule, regulation, or order, we emphasize that this argument goes to the merits of plaintiff's claims. Specifically, whether defendants' actions or inactions constitute a violation of conservation laws, rules, regulations, or orders, is a matter of proof, which the plaintiff is not required to present at the trial of an exception of no cause of action.* See *PennEnvironment and Sierra Club v. PPG Industries, Inc*., 964 F.Supp.2d 429 (W.D. Penn. 2013); see also *City of Toledo v. Beazer Materials and Servs., Inc., 833 F.Supp. 646 (N.D.*

4

Ohio 1993). *Likewise, whether plaintiff can successfully prove that defendants are liable under the applicable laws in this case is a matter of proof that goes to the merits of plaintiff's claims.* The merits of a claim are to be determined after findings of fact, upon a motion for summary judgment or a trial on the merits, and *whether a plaintiff will prevail on the merits is not an appropriate consideration on an exception raising the objection of no cause of action. Terrebonne Par. Consol. Gov't. v. Louisiana Dep't. of Nat. Res.*, 21-0486 (La. App. 1 Cir. 12/30/21), 340 So.3d 940, 945; *Bergen Brunswig Drug Co. v. Poulin*, 93-1945 (La. App. 1 Cir. 6/24/94), 639 So.2d 453, 458.

As such, in light of plaintiff's allegations that defendants "are violating" conservation laws, rules, regulations, and/or orders, the exception of no cause of a*ction must be denied.*

*Id*. at 309-11.

The supreme court concluded:

As previously noted, environmental regulatory statutes are unique and rely heavily on self-reporting and the willingness of the regulated industry to voluntarily comply with the applicable laws and regulations. It is for precisely this reason that citizen suits are a necessary and integral component of environmental regulatory statutes in particular.

Pursuant to LSA-R.S. 30:16, upon providing the requisite notice, any person in interest adversely affected by a violation of conservation laws, rules, regulations, or orders, may file suit for injunctive relief. The petition at issue herein alleges that the defendants have violated conservation laws and/or regulations by failing to close and/or properly close unlined earthen pits, and further, that the defendants are violating applicable rules and regulations by failing to remediate the property. Taking these allegations as true, as we are required to do, the petition alleges facts sufficient to state a cause of action for injunctive relief pursuant to LSA-R.S. 30:16.

*Id.* at 316.

In this case, Plaintiffs alleged violations under the Louisiana Water Control law, among many other claims. The legislature permits a "citizen suit" to address environmental concerns. The Louisiana Environmental Quality Act (LEQA) authorizes concerned citizens to enforce the act when the Louisiana Department of

Environmental Quality (LDEQ) fails to do so or does an inadequate job. The citizen suit for violations of the law is authorized by La.R.S. 30:2026, which states:

A. (1) Except as provided in Subsection B of this Section, any person having an interest, which is or may be adversely affected, may commence a civil action on his own behalf against any person whom he alleges to be in violation of this Subtitle or of the regulations promulgated hereunder. The action must be brought either in the district court in the parish in which the violation or alleged violation occurs or in the district court of the domicile of the alleged violator, and shall be afforded preferential hearing by the court.

(2) If, at the hearing on the order, it appears to the satisfaction of the court that a violation has occurred, or is occurring, the court may, in order to enforce the provisions of this Subtitle, assess a civil penalty not to exceed ten thousand dollars for each day of the continued noncompliance and the court may, if appropriate, issue a temporary or permanent injunction.

(3) The court in issuing any final order in any action brought pursuant to this Section, may award costs of court including reasonable attorneys and expert witness fees to the prevailing party. The court may also award actual damages to the prevailing plaintiff. The judgment of the court at the hearing, or subsequently on a petition for fixing the penalty if the violation is a continuing one, shall fix the total amount of penalty due, which shall be collectible under the same procedures as now fixed by law for the collection of money judgments and shall be awarded to and collected by the state of Louisiana and deposited into the state treasury.

B. No action under this Section shall be commenced under Subsection A of this Section:

(1) Prior to thirty days after the plaintiff has given written notice of the violation to the secretary and to any alleged violator by certified mail, return receipt requested.

(2) If the secretary or his legal counsel has commenced and is diligently prosecuting a civil or criminal action in a court of this state to require compliance with any standard, limitation, or order; however, in any such action any person having an interest which is or may be adversely affected may intervene as a matter of right.

(3) If the alleged violator is operating under a variance and is in compliance with the terms of such variance.

(4) Against any person while such person, with respect to the same violation is:

(a) Under any order issued pursuant to this Subtitle to enforce any provision of this Subtitle.

(b) A defendant in any civil suit brought under the provisions of R.S. 30:2025.

(c) The subject of an action to assess and collect a civil penalty pursuant to R.S. 30:2025(E).

C. Provided, however, that nothing herein shall be construed to limit or deny any person's right to injunctive or other extraordinary and ordinary relief under the Code of Civil Procedure or otherwise under Louisiana law, other than this Section.

D. The enforcement, procedures, and remedies herein provided for shall be in addition to any such procedures and remedies authorized under the laws of this state.

The claims in this case relate to the drinking water supply of Lafayette citizens.

The legislature set forth the purpose of the Water Control Law in La.R.S. 30:2072, which states:

The legislature finds and declares that the waters of the state of Louisiana are among the state's most important natural resources and their continued protection and safeguard is of vital concern to the citizens of this state. To insure the proper protections and maintenance of the state's waters, it is necessary to adopt a system to control and regulate the discharge of waste materials, pollutants, and other substances into the waters of the state.

Louisiana Revised Statutes 30:2076(A)(1)(a) provides:

A. (1) No person shall discharge or allow to be discharged into any waters of the state:

(a) Any waste or any other substance of any kind that will tend to cause water pollution in violation of any rule, order, or regulation[.]

Louisiana Revised Statutes 30:2004(7) defines discharge as:

[T]he placing, releasing, spilling, percolating, draining, pumping, leaking, seeping, emitting, or other escaping of pollutants into the air, waters, subsurface water, or ground as the result of a prior act or omission; or the placing of pollutants into pits, drums, barrels, or similar containers under conditions and circumstances that leaking, seeping, draining, or escaping of the pollutants can be reasonably anticipated.

7

Plaintiffs further claimed violations under La.R.S. 30:2077 relating to remediation of pollution:

> Any person who allows, suffers, permits, or causes the unpermitted pollution of the waters of the state in contravention of any provision of this Subtitle, any regulations adopted hereunder, or the terms and conditions of any permit, license, or order issued hereunder upon obtaining knowledge of such shall notify the secretary and if necessary take prompt remedial action pursuant to appropriate regulations adopted under this Subtitle or as ordered by the secretary or by an authorized assistant secretary. The goal of such regulations or orders, to the extent economically and technologically reasonable, is to eliminate those releases that may reasonably pose a threat to human health or the environment and to remediate contaminated media, taking into consideration current and expected uses.

***Do Plaintiffs' Petitions State a Cause of Action?***

Plaintiffs filed their initial petition in February 2016 and, thereafter, filed five amending and supplemental petitions with the most recent being in March 2022. Plaintiffs' initial 2016 petition set forth in pertinent part (emphasis added):

> 1. Plaintiffs bring this action to address long known, yet still ignored, environmental damage in the heart of historic downtown Lafayette that has impacted and *is threatening to further impact Lafayette's drinking water supply,* the Chicot Aquifer. Defendants are legally and morally responsible for this damage.
>
> 2. Despite an Environmental Impact Statement, two prior lawsuits, piecemeal testing, and decades of environmental regulatory agency "oversight," no meaningful action has been ordered, much less taken, to require a comprehensive assessment of the environmental impact at the approximately 40 acre former Southern Pacific Railroad/Union Pacific Railroad Lafayette rail yard operations area ("Facility).
>
> 3. Soil and shallow groundwater testing on file with the Louisiana Department of Environmental Quality ("LDEQ") confirms the presence of a toxic stew of "Superfund" hazardous substances perilously perched atop the Chicot Aquifer. Yet diligent review of the available LDEQ records reveals that *no testing in the Chicot has ever been ordered or performed.*
>
> 4. Documented contamination at the Facility constitutes an illegal, imminent, and substantial endangerment to Plaintiffs' and the entire Lafayette community's health and safety.

5.      Comprehensive site-wide assessment of the Facility is necessary to design a meaningful contaminant cleanup of the Facility and adjacent areas-*to eliminate the threat it poses to the Chicot, to prevent further contaminant migration, and to protect the entire Lafayette community*.

6.      Plaintiffs challenge Defendants to come forward in response to this Petition and meet with Plaintiffs' attorneys and experts and LDEQ to promptly:

a.      Accept responsibility for this environmental damage;
b.      Develop and adopt a mutually agreeable comprehensive assessment plan that will identify and characterize all contaminants throughout the entire Facility;
c.      Define the horizontal and vertical extent of that contamination both on and off site; and
d.      Adopt a timeline to properly and expeditiously clean up Defendants' toxic legacy to the Lafayette community.

. . . .

12. The Plaintiffs seek to recover all other general and equitable relief to which they are entitled under state law, including but not limited to, mandatory injunctions supported strict liability, negligence, nuisance, trespass, *violation of state environmental regulatory laws*, and punitive damages.  Plaintiffs seek a declaratory judgment finding the Defendants liable for the contamination and the remediation of the Facility and the property owned by the Plaintiffs. *The Plaintiffs also seek to recover evaluation, remediation*, attorneys' fees and costs pursuant to the Louisiana Groundwater Act, La.R.S. 30:2015, et seq.

In paragraphs 28–34 of the petition, Plaintiffs state that Defendants have confirmed the presence of PSH (Phase Separated Hydrocarbons) but failed to implement measures "to prevent the PSH and related toxic pollutants from *leaching into and migrating to the Chicot Aquifer* and the properties of Plaintiffs."  They allege that the pollutants, at the very least, threatened to contaminate the usable water supply.  Plaintiffs claim that because Defendants did not create a monitoring system of the Facility, the flow of the groundwater is difficult to determine "but it has been documented as moving in virtually all directions at one time or another from discrete areas within the Facility."  Plaintiffs claim further investigation is needed relating to the conduits for migration and that, "the continuing presence of hazardous

9

substances, toxic wastes, contaminants and pollutants in the groundwater and subsurface of the Facility is and/or may be migrating offsite to the soils and groundwater beneath the Plaintiffs' properties." Section G of the petition under the subheading "Louisiana Groundwater Act Liability" provides:

85. Defendants' prior assessment activities demonstrated that the contaminants present at the Facility migrate through pathways to shallow groundwater that poses a real threat to and/or has impacted the usable groundwater of the Chicot Aquifer.

86. The Defendants' actions and omissions contributed to the threat and/or impact to the usable groundwater of the Chicot Aquifer.

87. Under La.R.S. 30:2015.1, the Groundwater Act, the party responsible for threatening or contaminating usable groundwater must pay for evaluation and remediation of any contamination that threatens or impacts the usable groundwater.

88. As the responsible parties for the contamination that threatens and/or impacts the usable groundwater of the Chicot Aquifer, the Defendants are strictly liable for the evaluation and remediation of the contamination.

Plaintiff's First Amended Petition for Damages filed in March 2016 added additional Plaintiffs and amended certain factual allegations.

*Third Supplemental and Amending Petition for Damages-April 2018*

This petition added a significant number of factual bases for Plaintiffs' claims amounting to eight legal pages. Plaintiffs detailed a previous lawsuit relating to the same facility, *Consolidated Companies, Inc. v. Union Pacific Railroad Co.*, 499 F.Supp. 382 (5th Cir. 2007), in which the appellate court upheld the district court's ruling maintaining the plaintiff's LEQA claims and finding the "facility" as defined by the LEQA included the entire former railroad tract and not just the portion that the plaintiffs had purchased. The court also noted in a footnote:

Union pacific also contends that Conco cannot bring suit under LEQA 30:2026 because it does not have an "interest which is or may be adversely affected." Clearly, the evidence in the record demonstrates

(at a minimum) that Conco's interest in the Conco tract and its interest in the safety of its employees' drinking water may be adversely affected by the contamination located throughout the former railroad site. Accordingly, Union Pacific's argument on this issue fails.

However, the plaintiff settled with Defendants shortly thereafter preventing, in Plaintiffs' words, "any further efforts to secure assessment and cleanup of the entire Facility[.]" This petition further alleged in part:

59.5 Today, almost eleven years after the District Court's clear and unequivocal Order, Union Pacific/Southern Pacific have never begun- much less completed-the process of developing the Facility-wide evaluation and environmental assessment. Accordingly, the Facility and Union Pacific *remain in violation of the Louisiana Environmental Quality Act as noticed and plead herein.*

59.6 The Facility is an environmental hazard in fact and in law, *continuously discharging pollutants, contaminants toxins, hazardous wastes, hazardous substances, and other deleterious material into the waters of the state-including both surface water and groundwater.*

. . . .

59.10 Historic reports of environmental sampling and laboratory analysis on file with the LDEQ prove that these overlying strata within and adjacent to the Facility have allowed pollutants, contaminants, toxins, hazardous wastes, hazardous substances, and other deleterious materials to migrate from the surface into the Chicot Aquifer at numerous locations in relatively short times.. . . .

. . . .

59.12 The Georgia Pacific site where defendant Union Pacific operated is the only location where groundwater in the Chicot Aquifer beneath the Facility was ever tested. At that site, the organic compounds, Benzene, Toluene, Ethylbenzene, and Xylene ("BTEX")-which are included on the USEPA Hazardous Substances and/or Toxic Pollutant List-were found in the Chicot Aquifer groundwater sample, SB-1D. Benzene, a known human carcinogen, *was detected at an order of magnitude above Safe Drinking Water Act Maximum Contaminant Levels ("MCL")-an indisputable violation of LEQA and other state laws at the Facility.*

59.13 The Facility is the source of the BTEX found in the Chicot Aquifer at SB-1D.

59.14 Contamination remains throughout the Facility today, resulting in an ongoing threat to the Chicot Aquifer and the surrounding community.

59.15 *Past, present, and future discharge and migration of pollutants, contaminants, toxins, hazardous wastes, hazardous substances, and other deleterious materials into the Chicot Aquifer from the Facility constitutes irreparable harm to the Chicot Aquifer, citizens of Lafayette, and Plaintiffs that will further degrade the Chicot Aquifer's groundwater quality and the City of Lafayette's water supply.* This situation constitutes an impermissible infringement of Plaintiffs' property rights-including but not limited to their right to an uncontaminated source of drinking water.

. . . .

59.26 *Remediations performed to date* within the Facility *have been spotty, minimal, and woefully inadequate* to protect the First Groundwater Zone and the Chicot Aquifer beneath the Facility. Amazingly, no remediation of the First Groundwater Zone or the Chicot Aquifer beneath the Facility has ever taken place.

59.27 *Defendants' past and continued failure to comprehensively assess and cleanup constitutes a violation of LEQA*.

This petition added section H entitled, "The Migration of UPRC Contaminants at the Facility is Ongoing, Damaging to The Public's and Plaintiffs' Property interests, and Patently Illegal." It essentially states that facility pollution, contamination, toxins, hazardous waste, and hazardous substances are migrating and discharging into the Chicot Aquifer and private property "which is prohibited under RECAP and which further has never been consented to or regulatorily approved." To this petition, Plaintiffs added Exhibit N to support the facts plead in the first, second, and third amending and supplemental petitions. These exhibits were comprised of over fifty reports and results of scientific studies, public records, and other materials.

*Fourth Supplemental and Amending Petition for Damages and Injunctive Relief-January 2022*

This petition amended the factual basis for claims following samples retrieved from the area due to a study conducted by DOTD. Plaintiffs' experts and Defendants' experts each received "split" samples taken by DOTD. Plaintiffs alleged (emphasis added):

> 59.37 This 2020 assessment data further supports that *Defendants, by their actions and inactions, have been and continue to be in violation of the Louisiana Environmental Quality Act ("LEQA") Louisiana Water Control Law provisions and requirements regarding discharges to groundwater.*
>
> 59.38 The 2020 assessment data shows that *Defendants' LEQA Water Control Law violations include past and ongoing discharging, seeping, leaking, emitting and escaping of pollutants into subsurface water and the ground as a result of Defendants' prior acts and omissions under conditions and circumstances that leaking, seeping, draining, or escaping of Defendants' pollutants could have been reasonably anticipated and resulting in contamination of the Chicot Aquifer beneath the Facility.*

The petition then detailed pollutants found "after over 20 years of Facility investigation and LDEQ Risk Corrective Action Program ("RECAP") closures."

> 59.40 All shallow groundwater monitoring wells sampled during the 2020 assessment that were analyzed for RECAP Total Petroleum Hydrocarbon ("TPH") exceeded the RECAP TPH screening standard for groundwater beneath the Facility. Each exceedance is a RECAP violation.
>
> 59.41 Specifically, and by way of example, samples from TW-1 revealed the continued presence of phase separated hydrocarbon ("PSH"), i.e. oil floating or "free" oil in the soil and groundwater that was previously identified in assessments completed in the early 1990s, confirming that the source of soil and groundwater contamination is still present and sourcing new and additional discharges into Facility soil and groundwater.

Plaintiffs plead that "PSH is an ongoing and continuing source of pollutant discharging, seeping, leaking, migrating spreading, emitting, and dissolving in the shallow groundwater (a GW-2, i.e. capable of being used for human consumption)

that is hydrologically connected to the Chicot Aquifer." It also supplemented the exhibits with a March 2021 expert report.

*Fifth Supplemental and Amending Petition for Damages and Injunctive Relief-March 2022*

This petition further amended the factual basis of section VI for claims with new data from 2022 that the pollutants were migrating and contaminating the soil:

> 59.50 The 2022 sampling event revealed the presence of PSH in groundwater beneath soil that was visually clean (free of oil) and the migration of PSH into boreholes showing that the PSH is highly mobile and moving both vertically down and laterally across the site and throughout the Facility. The 2022 sampling data further confirms that there is a large source area of contaminant/hydrocarbon discharge to the groundwater at the Facility.
>
> 59.51 Moreover, the 2022 documentation of PSH in soil and groundwater confirms . . . PSH is present within the UPRC Facility. These 18 PSH areas *are an ongoing source of contaminant/pollutant discharges to groundwater underlying the UPRC Facility and, pursuant to LDEQ RECAP, regulations require an urgent, comprehensive investigation.*
>
> . . . .
>
> 59.54 All sampling done since this lawsuit was filed confirms that the Facility is severely impacted by UPRC's operations, actions, and omissions and *presents an imminent and substantial endangerment to the Chicot Aquifer, the drinking water supply of Lafayette's citizens, and requires an immediate, comprehensive assessment.*

It also added a supplemental report of its expert in support of the pleading.

Defendants point out in their brief that Plaintiffs have failed to set forth the separate "rule, order, or regulation" required in La.R.S. 30:2076(A)(1)(a). It is true that Plaintiffs' petitions initially seemed speculative about violations of the law. However, in reading all of the subsequent amending and supplemental petitions, we find Plaintiffs have stated a cause of action under La.R.S. 30:2076 (a)(1) and La.R.S. 30:2077 such that they can pursue a citizen suit under La.R.S. 30:2026.

14

The regulations applicable to water pollution are found in Title 33, Part IX, Subpart 1 of the Louisiana Administrative Code and consist of nearly 400 pages of detailed regulations regarding the State's waterways and water sources. Since Defendants have already been found to be in violation of the standards such that LDEQ ordered remediation, it is a given that a regulation has been violated. Defendants also argue that La.R.S. 30:2076 "by its terms" does not apply to an owner of previously impacted immovable property who is not currently engaged in activities that result in the release of pollutants. That suggestion is debatable but not relevant to our determination. Moreover, whether Defendants are currently releasing pollutants is a fact determination. Despite Defendants' strenuous assertions, the fact that LDEQ issued NFA (no further action needed at this time) letters at Defendants' request, is not a guarantee that a party will never pollute the water for the rest of time. Plaintiffs' pleadings set forth that Defendants' remediation efforts have been piecemeal and resulted in an inability to monitor the migration of pollution into the drinking water.

In a varying number of detailed ways as set forth in part above in our review of the petitions, Plaintiffs have alleged numerous times that Defendants are in violation of La.R.S. 30:2076(a)(1). That is, Defendant's facility is polluting the drinking water of the Chicot Aquifer because of the release and migration of pollutants beyond those areas that were formerly allegedly remediated. Plaintiffs have further alleged numerous times that Defendants have failed to properly remediate the area to prevent the migration of these pollutants in violation of La.R.S. 30:2077.

Clearly, as time progressed and studies were conducted, the allegations became more definitive. As this is merely an examination of the pleadings, it is beyond the scope of this ruling to determine the merits of the scientific underpinnings of the alleged pollution. Plaintiffs have provided a significant amount of scientific material and expert depositions to support their pleadings. The supreme court instructs that we must view the petitions in the light most favorable to the plaintiff and resolve any doubts in their favor. *State ex rel. Tureau*, 351 So.3d 297.

> Every reasonable interpretation must be accorded the language used in the petition in favor maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. . . . a petition should be dismissed for failure to state a cause of action only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief.

*Id.* at 310.

Plaintiffs have set forth sufficient facts in their petitions to meet this criterion. We find the deference due the plaintiffs further supported by the allegations that, if true, affect the drinking water supply of Lafayette citizens. Accordingly, Plaintiffs' pleadings have set forth a cause of action, and we reverse the decision of the trial court granting the Defendants' exception of no cause of action.

### Exceptions Barring Suit Under La.R.S. 30:2026(B)(4)(a)

Defendants strenuously argue that La.R.S. 30:2026(B)(4)(a), which provides that a citizen suit is prohibited when a party is, "with respect to the same violation[] [u]nder any order issued pursuant to this Subtitle to enforce any provision of this Subtitle[,]" applies to bar Plaintiffs' citizen suit. Defendants argue that three NFA letters issued by LDEQ are "orders" within the meaning of the exception. Plaintiffs strenuously argue that NFA letters are not "orders." Plaintiffs did not attach the NFA letters to their petitions, and they are, therefore, not subject to review regarding

this exception of no cause of action. Accordingly, this question is not properly before us on appeal.

***Sufficiency of Notice Letter to LDEQ***

Another argument advanced by Defendants is that Plaintiffs failed to provide a citizen's suit notice letter to LDEQ after every amending petition with the allegation of new facts in order to allow LDEQ to take appropriate action. Again, whether Plaintiffs' notice to LDEQ is deficient is a factual determination inappropriate for an exception of no cause of action.

***DEQ Purview and Legislative Intent***

Defendants argue that "a LEQA citizen's suit cannot be used be used to collaterally attack the *order* of DEQ, and a district court has no original jurisdiction to review or set aside determinations which the legislature had determined fall within DEQ's administrative purview."[1] The clear language of La.R.S. 30:2026 indicates that a district court does have jurisdiction to hear citizen suits. This argument completely negates the purpose of a citizen suit, which is "universally recognized" and acts as an "additional enforcement 'safety net' that is authorized, necessary, and integral to the protection of public health and resources." *State ex rel. Tureau*, 351 So.3d at 301. Even if the LDEQ has determined no violation whatsoever by a party, a citizen suit can still be filed. The court in *Giauque v. Arbuthnot*, M.D. La. 8/10/2005, 2005 WL 8155988 (Not reported), reviewed the purpose of the citizen's suit authorized by La.R.S 30:2026 (emphasis added):

> The Court agrees that, even though the LDEQ determined that Mr. Arbuthnot did not violate LEQA, the plaintiffs nevertheless have a right to bring a citizen suit against him under LEQA because the only limitations placed on such citizen suits are listed in La. R.S. 30:2026(B)

---

[1] We agree that if an existing "order" has been levied by LEDQ, then no citizen suit can be filed pursuant to the exception in La.R.S. 30:2026(B)(4)(a).

and because of the legislative purpose underlying the act. Nowhere in La. R.S. 30:2026(B) is it stated that a citizen suit may not be commenced by an interested person who is or may be adversely affected because the LDEQ has previously determined that the person alleged to be in violation of LEQA has not violated, and is not currently in violation of the act, and that no enforcement action or compliance order as to that person is necessary. In fact, LEQA is intended to provide legislatively authorized participation by the public in environmental disputes which is aimed at achieving two goals: *public input in substantive environmental matters and a "safeguard against abuses in the administrative process." Morris & Dickson Co., Inc. v. Jones Brothers Co.*, 29,379 (La. App. 2 Cir. 1997), 691 So.2d 882, citing *Matter of American Waste and Pollution Control* Co., 93-3163 (La. 9/15/94), 642 So.2d 1258.

In other words, *the purpose of the citizen suit provision is to encourage citizens or citizen groups to seek judicial enforcement of the LDEQ regulations where the LDEQ has either failed to act or where the sufficiency of the LDEQ's actions in protecting the public can be questioned. Morris & Dickson Co.*, 691 So.2d at 894. The Court finds that, through the present suit, plaintiffs are seeking to judicially enforce the LDEQ regulations where they allege that the *LDEQ has failed to act or where its actions were not sufficiently protective of the public*. Thus, the plaintiffs are not precluded from bringing suit against Mr. Arbuthnot simply because of the LDEQ's previous findings with regard to him, as this citizen suit is designed to safeguard against any abuses which may have occurred in the LDEQ's determination.

While exceptions do apply to bar suit, such as when a compliance order is in place, there would be no safeguard against administrative abuses without the citizen suit. If the legislature wished to give the LDEQ unfettered and infinite control of every environmental matter affecting the state of Louisiana, it would not have enacted the citizen suit legislation.

## CONCLUSION

Plaintiffs/Appellants, the Salvation Army, Barry J. Sallinger, Cypress Street Properties, LLC, Edward P. Mouton, and Frank's House LLC, have alleged sufficient facts to state a cause of action under La.R.S. 30:2076(A)(1)(a) and La.R.S. 30:2077. Accordingly, we reverse the trial court's grant of Defendants' exception of no cause of action and remand for proceedings consistent with this opinion. All

18

costs of this appeal are assessed against the Defendants/Appellees, Union Pacific Railroad Company, Southern Pacific Motor Trucking Company, and Centurylink Communications, LLC.

    **REVERSED**.